CHARLES H. BARTLETT, Trustee,

*vs.*

HAROLD M. PICKERING, CATHERINE EDITH PICKERING and GEORGE
ARTHUR PICKERING.

Penobscot.    Opinion February 20, 1915.

*Beneficiaries.   Construction.   Dividends.   Funds.   How far Timber  may be cut
upon  Trust  Lands.   Income.   Principal.   Remainder-man.
Trust  Estate.   Trustee.   Waste.   Will.*

A testator made a devise in trust of "wild lands," which were kept and held merely
for the produce of salable timber.   He gave no directions as to how they were to
be operated.   The income was to go to certain beneficiaries for life, remainder
in fee to another.   On a bill by the trustee for instructions,

*Held:*

1.   That the income derived from the cutting of trees or the sale of stumpage
rights belongs to the life beneficiaries, and not to the remainder-man.

2.   That the trustee is to operate the timber-land without strip or waste of the
rights of the remainder-man.   He must operate according to the precepts of
good forestry, and not so as to reduce the quantity of available timber below
what it was at the commencement of the trust.

3.   That when the trustee cuts trees, or permits such cutting, so much, and no
more, of the proceeds of such cutting, in addition to the previous cuttings, as
is equivalent to the growth since the commencement of the trust, of available,
marketable timber, taking the tract as a whole, is income to be paid to the life
beneficiaries.

4.   That the interest on income already received and deposited pending this
proceeding will follow the principal deposit.

5.   That of the income already received and interest thereon, the life benefici-
aries are entitled only to so much as would have been received had the opera-
tions been conducted in accordance with the preceding paragraph 2.   The
remainder is to be allowed to accumulate and be paid to the remainder-man
upon the termination of the trust.

6.   That the income from the wild lands now in the hands of the trustee belongs
to the life beneficiaries and the remainder-man in the proportion of 4,496,000
to 4,262,855, respectively.

7.  That the expenses for wild land taxes, scaling, commissions, and all other expenses connected with the wild land management, may be paid from any income in the hands of the trustee, whether derived from the proceeds of stumpage, or from any other trust property, and whether the wild lands are being operated for the time being, or not.

8.  That the trustee has large discretionary powers respecting the details of the management of the trust estate, and that it is not within the province of the court to direct him how to exercise these powers.

On report.   A decree will be entered by a single Justice in accordance with this opinion.   And reasonable solicitor's fees and expenses may be allowed to counsel, to be paid out of the funds now in his hands.

This is a bill in equity for the construction of the will of the late George William Pickering, brought by Charles H. Bartlett, of Bangor, in said County of Penobscot, as trustee under the will of George William Pickering, against certain of the beneficiaries.   Answers to said bill were filed by all of the defendants, and a hearing had before a single Justice.   At the conclusion of the evidence, the cause was reported to the Law Court for determination.   Upon so much of the evidence as is legally admissible, the Law Court will render such judgment as law and equity require.

The case is stated in the opinion.

*Charles H. Bartlett,* pro se.

*Sisk Brothers, and John Wilson,* for Harold M. and Catherine Edith Pickering.

*Matthew Laughlin,* guardian ad litem of George Arthur Pickering.

SITTING:   SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, HANSON, JJ.

SAVAGE, C. J.   Bill by the trustee under the will of George W. Pickering, for instructions.   The defendants, Harold M. Pickering and Catherine E. Pickering, husband and wife, are entitled to receive, during life, the income of the trust estate, in the proportions of three-fourths and one-fourth, respectively.   Upon the death of either, the share of the income bequeathed to that one is to go to the children of Harold in equal shares, and upon the death of the survivor, the entire trust estate is to go to Harold's children, "or to their heirs at law." The third defendant, George A. Pickering, a minor about nine years

of age, is now the only child of Harold. The questions we are asked to consider relate virtually to the respective rights of the life tenants and the remainder-man in the trust estate.

The testator in his lifetime owned five-eighteenths in common and undivided of the west half of Seboeis Plantation in Piscataquis County, and this property is a part of the trust estate. It is wild, uncultivated land, covered with a forest growth of pine, fir, cedar and hard woods. The tract has been cut over, and the present growth is second growth. Since the death of the testator in 1910, the plaintiff trustee has joined the other owners in "permitting" the land for the cutting of timber, and has received his proportional part of the stumpage. The cuttings for four years amounted to 8,758,855 feet. And after payment of taxes and expenses, the trustee now has on deposit $4,941.34 stumpage money, to which is to be added savings bank dividends on the deposit, $96.19, making the whole deposit $5,037.53. The income from the remainder of the trust estate is approximately $2,000 annually. It seems to be undisputed that the timber cutting operations from which the foregoing stumpage was derived took from the land a very much larger amount of timber in feet, than the growth of standing trees during the period amounted to. In other words, the operations have lessened the total amount of timber standing on the territory. An expert witness testified that the annual growth has been 1,124,000 feet. This does not include soft wood, white birch, poplar and ash below six inches in diameter, nor maple, yellow birch and beech below ten inches in diameter.

The plaintiff asks for answers to the following questions, viz.:

1. Do the funds in the hands of the plaintiff trustee (apart from dividends received thereon) represent principal wholly?

2. If so, should the dividends or income derived from such funds be distributed to the beneficiaries, according to the terms of the will, or should such income be allowed to accumulate and be added to the principal until the termination of the trust?

3. If some part of the receipts from stumpage as aforesaid may represent income to be paid to said beneficiaries, what method or rule shall the plaintiff trustee adopt to ascertain the same?

4. Shall the plaintiff trustee pay the taxes, expenses of scaling operations, commissions and other expenses connected with the management of his interest in said wild land from the proceeds of the

stumpage received therefrom, if any, or from the trust income received from other property?   Shall he use the savings bank dividends aforesaid for such purposes as far as they will go?

5.   If said land should not be operated on for a period, so that no stumpage were available, from what funds of the trust shall the plaintiff trustee pay the necessary expenses?

6.   The plaintiff trustee prays that the court will give him such other instructions in the premises as may be desirable.

Considerable testimony appears in the record respecting the annual percentage of growth of the different kinds of trees growing on this land, the wisdom or unwisdom of operating at all in certain species of timber trees until they have reached a larger growth, the marketable conditions of some of the varieties of wood, the total stumpage of trees of different kinds on the tract, and such like matters.   We think that a consideration of problems suggested by this testimony lies, for the most part, outside the province of the court in this proceeding.   What is, or is not, good forestry, we have no occasion now to consider.   In answering the plaintiff's questions, we can in general only lay down such rules of law as are within the scope of the questions, and as may be useful to him in the performance of his duties both to life tenants and remainder-man.   The law and the unlimited terms of the trust confer upon him large discretionary powers in determining the details of the management of the trust estate. Very much must necessarily be left to his sound judgment and wise discretion, to be applied as various conditions and contingencies may arise.   It is not within the province of the court to direct a trustee how to exercise a discretionary power committed to him. He must use his own discretion.   And when he does so, keeping within legal limitations, he is protected.

1.   The first question, which is in effect, whether the stumpage funds now in hand belong wholly to the remainder-man and must all be held in trust for him, must be answered in the negative.

It is undoubtedly true that the general rule is that trees cut and sold are treated as principal and not as income, and that a life tenant is guilty of waste in cutting trees.   But we think this rule is not applicable to trees on "wild land" so called in this State, which is kept and held merely for the produce of salable timber.   These lands are held for income-producing purposes, and the only income derivable from them ordinarily comes from the cutting and sale of

marketable timber trees.   The bequest of the income of the trust estate in this case, consisting, as it did, in considerable part of timber-lands, contemplated, we think, that the income should be obtained from the cutting of trees, or the sale of stumpage rights.   See *Drown* v. *Smith*, 52 Maine, 141; *McNichol* v. *Eaton,* 77 Maine, 246; *Honywood* v. *Honywood,* L. R., 18 Eq. Cas., 306.   A similar rule has been applied to the rights of life tenants in analogous cases of iron, coal, oil and gas mines, opened in the lifetime of the testator, even when the exercise of the right might in time exhaust the mine, and practically destroy the estate of the remainder-man.   *Gaines* v. *Green Pond Iron Min. Co.*, 33 N. J., Eq. 603; *Sayers* v. *Hoskinson,* 110 Pa. St., 44; *Koen* v. *Bartlett,* 41 W. Va., 559.

But a mine of iron or coal is in one important respect unlike a growth of living forest trees.   A mine necessarily tends to exhaustion by the very fact of operation.   It is not necessarily so in case of a living forest.   It may be operated perpetually, without diminution in quantity of the available timber remaining.   That is to say, it may be so operated that the annual growth will make up for the timber taken off by operation.

Now we have before us a devise of a trust estate in timber-lands, under which the income only goes to one set of parties, for life, and the remainder, or corpus of the trust estate, to another, upon the termination of the life interest.   The will itself gives no further indication of the intention of the testator as to how the timber-land part of the trust should be operated.   It is contended that the testator in his lifetime, in conjunction with the other owners, was in the habit of cutting more than the annual growth would replace.   But we do not think this fact, if it be a fact, can effect the construction of the will.   Having made the devise as he did without qualification or directions, we think it must be presumed that he intended that the estate should be managed so as to conserve all interests,—to secure on the one hand the natural increment of the trust estate as income for the life beneficiaries, and, on the other hand, to protect and preserve the entire remainder for the remainder-man.

The conclusion is that the trustee, so far as his interest goes, is to operate the timber-land without strip or waste of the rights of the remainder-man.   He may operate at such times and in such places as his good judgment may dictate.   He need not operate annually. But when he does operate, so much, and no more, of the proceeds of

such cutting, in addition to previous cuttings, as is equivalent to the growth, since the beginning of the trust, of available, marketable timber, taking the tract as a whole, is income.   He must not operate so as to reduce the quantity of available timber below what it was at the beginning.   He is to operate according to the precepts of good forestry, as to times and places of cutting, and size of trees to be cut, with a view to the preservation of the rights of all the parties.   It would be impracticable and unwise to attempt at this time to specify the limitations of his powers in greater detail.   The trust has devolved upon the trustee, and he has assumed the responsibility of the exercise of sound judgment and faithful discretion in these matters.   If the trustee finds himself embarrassed in the application of these principles by the fact that there are other owners who may wish to operate otherwise, he may, under the will, sell his interest in these lands and re-invest, or, under the law, he may petition for partition.

   2.   We understand that the second question relates to the disposition of the savings bank dividends on the deposit of stumpage funds.   These dividends will follow the principal deposit proportionally.   The life beneficiaries are entitled only to so much of the deposit and dividends as would have been received had the operation been conducted in accordance with the principles laid down in the answer to the first question.   The remainder of deposit and dividends should be allowed to accumulate and be paid to the remainder-man upon the termination of the trust.

   3.   When the operations are conducted in accordance with the principles laid down in the answer to the first question, the net income will all belong to the life beneficiaries.   It is therefore necessary to advise only as to the distribution of the funds now on hand.   The cuttings from which these funds were derived, during the four years since the trust was created, amounted to 8,758,855 feet as already stated.   The counsel for the remainder-man offered evidence that the report and estimates of the expert witness that the annual growth had been 1,124,000 feet annually, or 4,496,000 feet for the four years, were somewhat too favorable to the life beneficiaries. But at the argument, counsel stated that he was willing to abide the report of that witness.   We shall, therefore, assume it to be correct. We disregard the small growth, as the expert did.   When it reaches a growth when it may be cut, having regard to good forestry, the life beneficiaries may have the benefit of it.   Until then they are not

entitléd to it.  According to the estimate, the four years' operations have resulted in a strip or waste of the remainder-man's interest of five-eighteenths the difference between 8,758,855 feet and 4,496,000 feet, or, 4,262,855 feet.  The stumpage funds now in the hands of the trustee belong, therefore, to the life beneficiaries and the remainder-man in the proportion of 4,496,000 to 4,262,855 respectively.

4.   The trustee asks if he is to pay the wild land taxes, expenses of scaling, commissions and other expenses connected with the wild land management from the proceeds of stumpage, or from the income of the other trust property.  We answer that it is immaterial.  It is a matter of bookkeeping.  The interest of the life beneficiaries in the income properly to be derived from the timber-lands is precisely the same as their interest in the other income.  The trust estate is a unit, though made up of different items.  Any income in the trustee's hands is available to pay any proper expenses of the trust.

5.   The trustee asks further from what funds expenses shall be paid if the land shall not be operated on for a period.  The answer to the previous question answers this one.

6.   Lastly, the trustee asks for "such other instructions in the premises as may be desirable."  This is too indefinite to require an answer.

A decree will be entered by a single Justice in accordance with this opinion.  And reasonable solicitor's fees and expenses may then be allowed to counsel, to be paid by the trustee out of the funds now in his hands.

*So ordered.*