168 So. 687

**AMOS v. TOOLEN et al.**

**6 Div. 917.**

Supreme Court of Alabama.

May 21, 1936.

Rehearing Denied June 18, 1936.

Basil A. Wood, of Birmingham, and C. R. Shannon, of Mobile, for appellees.

Wm. S. Pritchard and Thos.. H. Fox, both of Birmingham, for appellant.

KNIGHT, Justice.

The proceedings in this cause were originally commenced by a petition by Mrs. Mabel Roy Amos, as trustee under the will of the late Charles E. Roy, against Thomas J. Toolen, as bishop of Mobile, a corporation sole, as trustee, and others.

After a demurrer by some of the respondents had been sustained to the petition, the petitioner, by leave of the court, filed an amendment, substituting in lieu of the original petition a new bill, in which the complainant rather repudiated the theory of the original petition that she was a trustee under the will of the said Charles E. Roy, deceased, and asserted her right to equitable relief upon the theory and basis that she was a life tenant in possession, under the will of the said Roy, and, as such, was entitled to have her dealings and actions with reference to her management of the estate, and particularly the corpus, passed upon by the court, and, if it should be found that the property had been properly managed, and duly accounted for, to that time, to have her acts and doings ratified and approved by the court.

To the bill as amended, certain of the respondents again demurred, but the demurrer was overruled. With the propriety of the action of the court in overruling the demurrer to the amended bill, we are not concerned on this appeal.

The respondents Wood, after their demurrer was overruled to the amended bill, filed an answer thereto, incorporating matters therein which they insisted entitled them to affirmative relief against Mrs. Amos, whether she was to be regarded as a trustee, appointed by the will, or simply a quasi trustee, as the holder of the life estate, and thereby required to protect the remainder interest, so that, when the life estate should fall in, the remainder estate would pass, as the will contemplated, to the remaindermen, or ultimate beneficiaries. With this in view, they made their answer a cross-bill in the cause, and made all parties in ‚interest before the court parties defendant thereto. This answer and cross-bill was subsequently amended.

Mrs. Amos, one of the parties respondent to this cross-bill, filed numerous grounds of demurrer thereto.

The court, on submission on the demurrer, held the demurrer to the cross-bill as last amended was not well taken, except in one designated aspect, and accordingly overruled the same. The decree then proceeds: "The court is of the opinion, however, that the demurrer as directed to that phase or aspect of said cross-bill as last amended, which seeks to have said Mrs. Mabel Roy Amos account for income received from said estate is well taken, and should be sustained, and it is therefore ordered, adjudged and decreed by the court that said demurrer is hereby sustained as to that phase of said cross-bill which seeks an accounting, or seeks to require said Mrs. Mabel Roy Amos to account for any of the income received from said estate, the subject matter of said cross-bill."

From this decree Mrs. Amos has prosecuted the present appeal.

We may here state that we entertain no sort of doubt but that it was the intention of the learned chancellor to overrule all other grounds of demurrer to the cross-bill, those directed to the cross-bill as a whole as well as those directed to its several aspects, except the one aspect, as to which the court in terms sustained the demurrer. The cases relied upon by appellees are inapplicable here.

It appears from the bill as amended that Charles E. Roy died in or about the year 1906 seized of a large estate; that he left surviving him a widow and a daughter, the complainant-appellant; that his will was admitted to probate and record in the probate court of Jefferson county, Ala., about January 2, 1907; that by the fourth and fifth and seventh clauses of his will the testator made sundry specific devises, not here necessary to mention; and by the sixth clause he bequeathed to his wife and daughter, share and share alike, all of his personal property, of whatever description.

By the eighth clause of his will the testator bequeathed all the remainder of his estate, "real, personal and mixed," to his wife and daughter for and during the terms of "their or either of their lives, under this will, share and share alike."

To this clause there were annexed the following provisions:

"(a) In case my said wife should survive my said daughter and my said daughter die without leaving a child or children, then I give and bequeath to my said wife that portion of my estate that would, otherwise, under this item of my will, go to my said daughter.

"(b) In case my said daughter should survive my said wife, then I give and bequeath to my said daughter that portion of my· estate that would otherwise, under this item of my will, go to my said wife.

"(c) In case my said daughter should die leaving a child, or children, then such child or children shall take that portion of my estate that would, otherwise, under this will, go to my said daughter."

By clause 10 of his will, the testator made disposition of the remainder property in which he had given life estates to his wife and daughter.

Among the remaindermen are the cross-complainants Wood, children of the late Sterling A. Wood, and they take a vested interest jointly to the extent of one twenty-fourth of said remainder—the amount of which is affected by the circumstance of whether the daughter shall leave surviving her a child, or children and a husband.

By the third clause it was provided: "I hereby authorize and empower my ·said executors, in case they should concur in .the opinion it would be to the advantage of my estate, to sell any or all of my real estate not herein specifically devised, and reinvest the proceeds in other real estate, and hold the same in the place and stead of the real estate so sold."

By the ninth clause of his will, the testator provided: "I will and direct ·that all of my real estate, not herein specifically devised, shall remain unsold and be kept together under the terms of this will until the death of both my said wife and daughter, but the net income of same shall be paid monthly to my said wife and daughter under the terms of this will, as the same shall be collected, share and share alike."

And again in the tenth clause of the will the testator directs that, when his wife and daughter shall both die, all of his estate shall be sold by his executors, and his estate distributed as provided in said clause among the remaindermen.

By the twelfth clause of the will, the testator appointed his wife,· Minnie A. Roy, his daughter, Mabel Roy Leady (now Mabel Roy Amos, the complainant in the original bill), Redmund N. Wheeler, and Edward P. Allen, as bishop of Mobile, and his successors in office as such, and Sterling A. Wood, as executors of said will.

It appears that, long prior to the filing of the proceedings in this cause, the said Minnie A. Roy, Sterling A. Wood, and Redmund N. Wheeler died, and it nowhere appears that they ever qualified as such executors, or ever entered upon the duties of their offices as such executors. They may or may not have done so. As to this the bill and cross-bill are silent.

It appears that a final settlement was made in the probate court of Jefferson county by the said Mabel Roy Amos and Edward P. Allen, bishop of Mobile, corporation sole, of their administration of said estate on October 19, 1925, and on that date certain funds, to wit, $6,628.88, representing funds then on hand in the possession of said executors, were ordered by the court to be paid to the said Mabel Roy Leady (now Mabel Roy Amos) and to the said Edward P. Allen, as bishop of Mobile, corporation sole, "as trustee" of the ·estate of said Charles E. Roy, deceased, under the terms of the decedent's will. They so receipted for the same.

It also appears from the· cross-bill of cross-complainants Wood that the said Mabel Roy Amos, or the said Mabel Roy Amos and Edward P. Allen, as bishop of Mobile, and the said Thomas J. Toolen, as successor to the said Edward P. Allen, as ·bishop of Mobile, corporation sole, have received from said estate of Charles E. Roy, deceased, representing ·proceeds of the sale of lands of said decedent, moneys to the amount of $75,106.81, in addition to the said sum of $6,628.88, above mentioned. All of the above-mentioned moneys the said executors, or Mrs. Mabel Roy Amos, have expended, as shown by the averments of the cross-bill.

The cross-complainants Woods charge that the cross-respondent Mrs. Amos exercised a complete and unqualified dominion and control over the action of her coexecutor, the said Edward P. Allen, bishop of Mobile, in the matter of the handling of said estate, down to the time of his death, and a similar dominating influence over the said Thomas J. Toolen, the successor, in said executorship, to the said Allen, down

to a short while before these proceedings were commenced.

The averments of the cross-bill, as amended, show that the life tenant, Mrs. Amos, whether claiming in her right as life tenant or as one of the executors of the will of the said Charles E. Roy, deceased, has been the dominating and controlling force in the management of said estate, and has all along been exercising powers not conferred upon her by law as an executrix, nor by the terms of said will.

It is also averred that she has expended large sums of money, to wit, $22,500, belonging to said estate, proceeds of property sold by the executors, in the purchase of stocks in building and loan associations, in total disregard of the terms of the will which required the reinvestment of such funds in real estate, and also has expended large sums of money, similarly earmarked, in other ways, contrary to the terms of the will. A statement of the investments and expenditures appear in the cross-bill, as well as in the bill filed by Mrs. Amos.

It is also averred in the cross-bill filed by the Wood remaindermen that Mrs. Amos, the life tenant, is in possession of all the property of said estate, not specifically devised to others, and is exercising complete control over the same; that she has "asserted and threatened the said cross-complainants that, prior to the termination of the life estate of which she is the sole beneficiary (her mother, the other life tenant having long since died) that she will control, operate and manage the corpus of the said estate in such manner that all the corpus will be forever lost to your cross-complainants, and the other named beneficiaries in said will."

It is also charged that the said Mrs. Mabel Roy Amos is not a fit and suitable person to hold the possession of, and exercise control over, all or any portion of the corpus of the said estate, in the capacity as an individual or in the capacity as sole, or as joint trustee of the said estate.

The cross-complainants pray for the casting of a proper account against the trustees in the matter of their management of the trust and the trust estate, including the income and corpus, and for the rendition in conjunction therewith of a judgment against all parties liable to the vested remaindermen, due to the unlawful and illegal acts, or other acts, complained of, together with interest on such sums as may be found to be due; that the domination and control and possession of Mrs. Mabel Roy Amos of any or all of the corpus of the trust estate be terminated; and that trustees be appointed by the court for the management of the trust property, pending termination of the life estate; that proper bonds securing the vested remaindermen be required of such trustees; and for construction of the will of the said Charles E. Roy, deceased, for the benefit of the remaindermen, and to advise the trustees of their authority with reference to such operation, control, and management of the trust estate; and for general relief.

To this cross-bill Mrs. Amos, appellant, filed a number of grounds of demurrer, some directed to the cross-bill as a whole, and some directed separately to its several aspects.

These demurrers take the point (a) that the demurrant was entitled, under the will of said Charles E. Roy, deceased, to the sole possession and management of the corpus of said estate during her life, to the exclusion of the Bishop of Mobile, or any other person; (b) that no sufficient facts were averred in the cross-bill to justify the removal of Mrs. Amos from the possession and management of the estate; (c) that the alleged investments in building and loan associations' stocks are not in fact or in law illegal; (d) that no loss is averred to have been suffered by reason of the alleged illegal investments in building and loan associations' stock, and no damage is alleged to have resulted to the remaindermen; (e) that on the averred facts the cross-complainants were not entitled to a judgment against Mrs. Amos; (f) that the cross-bill seeks to reduce part of the assets of the estate of which Mrs. Amos is the life beneficiary to a judgment in favor of the remaindermen, and to the exclusion of the life beneficiary; (g) that all the relief prayed for in the cross-bill can be granted fully, effectually, and completely under the bill and answer.

As heretofore noted, the court overruled the demurrer to the cross-bill as a whole, and to all the several aspects, except that aspect which sought an accounting of the income derived from the corpus of the estate.

We will first address ourselves to a construction of the will.

It is our judgment and conclusion that the testator intended that his estate,

except that specifically devised, should be kept in the hands of the executors named in his will until the falling in of the life estates created by the will. This seems obvious from the following facts appearing in the will: The will directs that the monthly income to be derived from the properties, as to which the testator had created life estates in his wife and daughter, should be paid to his wife and daughter; that the executors are given the power to sell any of his real estate, not specifically devised, and reinvest the proceeds in other real estate, and hold the same in the place and stead of the real estate so sold; the will directs that all the testator's real estate, not specifically devised, should remain unsold and be kept together under the terms of his will until the death of both his wife and daughter; and that, upon the termination of the life estates, the executors are directed to sell all of his estate, and make distribution as directed in the will. It is thus apparent that it was not the intention of the testator that the executors should be finally discharged upon the completion of their purely executorial duties, but they were to be continued in office, and in the discharge of duties superadded to those ordinarily adhering in the office of executor as defined by statute.

■ There is seeming conflict between clause 3 and clause 9 of the will with reference to the sale of the real estate of the decedent by his executors. However, the intention of the testator from the reading of the entire will seems to us clear. It was his purpose and intention that his estate should be kept invested in real estate; that, if his executors should concur in the opinion that it would be to the advantage of the estate that any or all of his real estate should be sold, then they (executors) were empowered to sell, but they were enjoined to reinvest the proceeds in other real estate. We are of the opinion that the two clauses mean that, while the executors were authorized to sell any part of the real property of the estate, it could only be done for the specific purpose of reinvestment, and the lands bought with funds derived from lands sold must be regarded and treated as if they constituted a part of the original realty holding of the decedent, and "to stand in place and stead of the real estate so sold." It was but a limited power of sale. Of course, upon the falling in of Mrs. Amos' life estate, the executors are authorized to sell and distribute the proceeds among the remaindermen, but, until

that time shall arrive, any and all sales must be made strictly, and only, for reinvestment in other real estate, and deemed to the advantage, in the concurrent opinion of the executors, of the estate.

It is our opinion that it is the duty of the executors to keep the real estate of the decedent, not specifically devised, together, and pay over monthly to the life beneficiary the income derived therefrom.

■ If the averments of the cross-bill are true, the life tenant, Mrs. Amos, has been in the possession of all the property of the estate, other than that specifically bequeathed, and that she has had the possession of the funds derived from the sale of lands, and has expended the same in many ways, and in some instances not as directed by the will, but as she and her coexecutor pleased to do, and in direct disregard of the plain and unambiguous terms of the will.

Whether in possession of these assets of the estate in her capacity as a life tenant, or as an executor, clothed with powers by the will beyond those adhering in an ordinary executorship, and therefore a trustee pure and simple, can make no difference, for the very obvious reason that a life tenant is a trustee or quasi trustee for the remaindermen.

As life tenant, he is a trustee in the broad sense that he cannot injure or dispose of the property to the injury of the remaindermen. 21 Corpus Juris, § 73, p. 941; Abney v. Abney, 182 Ala. 213, 62 So. 64; Peters v. Rhodes, 157 Ala. 25, 47 So. 183; 16 Cyc. pp. 616, 617. The only difference between such a trustee and a trustee of a pure trust is that the former may use the property for his exclusive benefit and take all of the income and profits. Cook v. Collier (Tenn.Ch.App.) 62 S.W. 658; Vaden v. Vaden, 1 Head (Tenn.) 444; 16 Cyc. pp. 616–17.

Mrs. Amos is not only a life tenant of the property involved in this proceedings, but is one of the two surviving executors. By the terms of the will of the decedent these executors are given the right to sell any and all the real property of the decedent, not specifically devised, but only, as heretofore pointed out, for the limited purpose of reinvestment.

■ "The executor or administrator is not only the personal representative of decedent, but is also to a very great extent the representative of the creditors, and of the legatees or distributes. He occupies a

position of trust with respect to those who are interested in the estate, and is a trustee in the broadest sense, although not in the general acceptation of the term." 23 Corpus Juris, § 387, pp. 1170, 1171.

In making investments of funds of the estate, the representative acts as trustee rather than as executor or administrator, and his duties and liabilities in respect to such investments are governed by the same rules as apply to other trustees. If the will contains directions as to the investments to be made, these must be followed. 24 Corpus Juris, § 493, p. 72.

And it may be stated broadly that, where an executor or trustee uses or employs the property of the estate without authority of law, or some power conferred by the will, or instrument appointing him, such executor or trustee commits a devastavit and conversion, and is liable therefor to the beneficiaries of the estate.

In the bill as amended the complainant avers that she, as life tenant named in the will before us has been in sole and full charge of the said estate from the time when final settlement thereof was made by the executors, viz., October 19, 1925, down to the time of the filing of her bill, and has managed the same to the exclusion of all other parties, including the bishop of Mobile.

It further appears from her said bill that she is the one that has expended the funds of the estate as shown in the statement filed by her, and which, by her bill, she seeks to have this court approve.

In short, Mrs. Amos takes upon herself full responsibility for the expenditure of upward of $80,000 of the corpus of the funds of the estate, and of which expenditures less than $30,000 were reinvested in real estate. She shows also that she used $22,500 of the corpus of said estate (all of which was derived from the sale of real estate belonging to said estate) in the purchase of stock in two or more building and loan associations. She contends, however, that this employment or disposition of the funds of the estate was intended as, and by way of, a temporary deposit, subject to withdrawal at her pleasure.

We are fully persuaded, however, that such use of the corpus funds of said estate, derived from the sale of real estate of the decedent, was not only unauthorized in law, or by the terms of the will, but was in direct disregard of the plain and unambiguous directions of the will. The purchase of this stock constituted a devastavit and conversion of funds of the estate, and for which Mrs. Amos is answerable to the remainder beneficiaries of said estate.

In addition to the wholly unwarranted and wrongful use of the funds of said estate in the purchase of said stock, Mrs. Amos' own showing discloses that she has paid out other moneys in large amounts without authority of law, and contrary to the terms of said will.

The fact is, the bill and cross-bill read and considered together show that Mrs. Amos paid but little, if any, attention to positive provisions of the decedent's will; that she either knowingly disregarded the same, or was wholly unable to comprehend the trust duties imposed upon her by the will, or was badly advised in respect thereto. So much so that the court may, if the cross-complainants sustain by proof the allegations of their cross-bill, to the effect that her acts were in willful disregard of her duties, aided by the positive admission of the complainant's own bill, remove Mrs. Amos from all control of the property, and from the executorship, whereupon, under the provisions of section 5756 of the Code, there being another executor named in the will, and since the testator has not provided in the will for a substitute, such other executor, so named, is required to complete the administration, and as such executor will perform the duties of the trust imposed upon him by the will. There being no exemption in the will from giving bond, the court will require the executor, as required by statute, to give sufficient bond for the protection of the parties in interest.

We feel no hesitancy in saying that a vested remainderman is entitled to resort to equity by a bill quia timet, or other appropriate proceedings, for the protection of their interest when the property in the hands of a life tenant, or in the hands of an executor, who is charged with trust duties, with reference to the estate, is in danger of loss, deterioration or injury. Bethea v. Bethea, 116 Ala. 265, 22 So. 561; Lewis v. Hudson, 6 Ala. 463.

The rule undoubtedly applies in case of personalty, and we can see no reason why it should not apply in case of realty, where the life tenant is also executor of the will, with the right to sell the property for the purpose of reinvestment. Particularly should

this be held to be true, in view of our Code, § 6916, which relieves the purchaser of said property from the duty of seeing that the purchase money is applied according to the terms of the trust.

The cross-bill as amended of cross-complainants Wood, except in the particular pointed out by the chancellor, and as to which he sustained the demurrer of cross-respondent Amos, contains equity, and the court properly overruled the appellant's demurrer thereto. This being true, the fact that the cross-bill may pray for "further and unwarranted" relief would not subject it to demurrer. McDowell v. Herren et al., 219 Ala. 370, 122 So. 336; Wilks v. Wilks, 176 Ala. 151, 57 So. 776; Rosenau v. Powell, 173 Ala. 123, 55 So. 789.

It follows that the interlocutory decree appealed from is due to be affirmed, and it is so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.