32 So.2d 368

**LINENTHAL et al. v. BIRMINGHAM
TRUST & SAVINGS CO.**

6 Div. 510.

Supreme Court of Alabama.

June 26, 1947.

Rehearing Denied Nov. 6, 1947.

Harris Burns, of Birmingham, for appellant Warriner.

Jackson, Rives & Pettus, of Birmingham, for appellants Linenthal and King.

Smyer & Smyer, of Birmingham, for appellee.

LAWSON, Justice.

Sibley P. King died on January 10, 1940, leaving a last will and testament. He was a resident of Birmingham at the time of his death.

Under the first item of his will, provision was made for payment of charges and special bequests to certain named charities, churches and institutions. Special bequests to named relatives were provided in the second item.

In the third, fourth and fifth items of the will, the testator attempted to dispose of the residue of his estate remaining

after payment of charges and the special bequests mentioned in the first and second items.

One of the residuary legatees is Mrs. Nathalie King Warriner, a sister of testator. As to Mrs. Warriner, the fourth item of the will provided: "Fourth: I give, devise and bequeath, to my beloved sister, as follows, to-wit: One Third of all the remaining Estate, & net revenue & proceeds of same, to Nathalie King Warriner, as Trustee without Bond—for her own use & benefit, during her life,—and also, at & after her death. Said one third-interest, of said remaining estate, as above, shall be divided, equally between all my nieces & Nephews—share & share alike— those who survive her,—the said Nathalie King Warriner."

The estate of decedent consisted of real estate, income-bearing at least in part, monies on hand at his death, and stocks and bonds.

In October, 1940, a bill for construction of the said will was filed in the circuit court of Jefferson County, in equity, by the executor. That court rendered a decree construing the will and advising the executor upon certain matters of administration. It included a provision looking to the sale of the stocks and bonds by the executor, thus converting all the personalty into money for distribution to the residuary legatees. The disposition of the real estate was at that time undetermined. The decree so rendered was reviewed by this court in the case of Frye v. Community Chest, 241 Ala. 591, 4 So.2d 140.

One of the questions presented by the appeal in the Frye case, supra, was the construction to be placed on the fourth item of the will, the bequest of one-third of the residuary estate to Mrs. Warriner, which item has hereinabove been set out. It was there held: "Without further discussion we are of opinion the Fourth Item of the will bequeaths to Mrs. Nathalie King Warriner a life estate only in ⅓ of the residuary estate, with no power of disposition, or entrenchment on the principal or corpus of the estate, and that such principal in whatever form invested at the time of her death, passes to the remaindermen, the nephews and nieces of the testator, who shall survive her, share and share alike. Their right of possession will accrue at the date of her death." (241 Ala. page 600, 4 So.2d 147).

Mrs. Warriner was a nonresident of this state, an elderly lady not shown to have been experienced in handling substantial amounts of money. It was held by this court in Frye v. Community Chest, supra, that provision should be made for the protection of the estates of the remaindermen. In that connection it was said:

"The proper rule is to give the life tenant an election to give a bond with local sureties, submitting the obligors · to the jurisdiction of the court, conditioned to account for and deliver the principal of the estate as equity shall require; and if the life tenant elects not to give bond and assume the responsibility of managing the trust property, the funds should be paid into court and committed to a trustee of the appointment of the court, the income to be paid over to the life tenant from time to time as the court shall decree, and the corpus held for the remainderman. Jackson v. Jackson, supra.

"Inasmuch as the testator's intent was to give Mrs. Warriner the full benefit of the net income on the estate to be bequeathed, we think and hold that the costs and expenses incident to the management of the estate by an outside trustee, if appointed, should be a charge on the corpus of the estate, and not go in diminution of the income of the life tenant. 65 C.J. p. 947, § 868." (241 Ala. page 601, 4 So.2d 148)

Mrs. Warriner not having elected to execute bond as prescribed in the decision of this court in Frye v. Community Chest, supra, the Birmingham Trust & Savings Company, under decree of the circuit court of Jefferson County, in equity, rendered April 3, 1942, was appointed trustee for the said Nathalie King Warriner, to act pursuant to the provisions of the will of Sibley P. King, deceased, as construed by the circuit court of Jefferson County, in equity, and by this court in the case of Frye v. Community Chest, supra.

On April 16, 1943, the Birmingham Trust & Savings Company, in its capacity as

Trustee for Nathalie King Warriner, instituted the instant proceedings by filing its original bill for declaratory judgment in the circuit court of Jefferson County, in equity. The bill averred among other things that under the decree appointing complainant as trustee for Mrs. Warriner, it was provided that all funds or property to which she was entitled as life tenant be turned over to the complainant for Mrs. Warriner's benefit; that certain properties therein described were delivered to complainant as such trustee, including certain parcels of real estate which were in great need of improvement. The bill prayed that the court specifically instruct complainant in regard to a number of matters, among them the following:

"4. What repairs, if any, should Complainant make on said real properties?

"5. If repairs are made, are they chargeable to income or principal, or both?"

The respondent, Nathalie King Warriner, the life tenant, filed an amended answer and cross bill. The averments of the amended cross bill here pertinent may be summarized as follows: That the buildings on the improved real estate were in a deplorable state of dilapidation and greatly in need of repair; that such condition existed when the property came into the hands of the trustee and in fact had existed for several years prior to the death of the testator; that cross-complainant, Mrs. Warriner, at the time her cross bill was filed, was 81 years of age with a life expectancy of approximately four and one-half years; that in view of Mrs. Warriner's advanced age and the fact that the property was in a bad state of repair when her life estate therein was created, it would be unfair and unequitable for the cost of the repairs or any part thereof to be paid out of income, thereby diminishing Mrs. Warriner's returns from the property and increasing the value of the property for the benefit of the remaindermen. Among other things the amended cross bill prayed as follows:

"(a) That the court make and enter an order authorizing the trustee to make necessary repairs on the real estate belonging to the trust estate with a view of making the property more tenantable and of preserving the same for the benefit of this respondent during her lifetime and for the benefit of the remaindermen thereafter, and that all of the costs of such necessary repairs be paid out of the corpus of the trust estate, and that the trustee be instructed to charge all such repairs heretofore made to the corpus of the estate and to pay to this respondent as her income the amount of such repairs heretofore made, the costs of which have been withheld out of the income.

"(e) That this respondent be allowed reasonable compensation for the services of her solicitor herein to be paid out of the corpus of the trust estate.

"(j) This respondent specifically prays that the costs and expenses incident to the management of the trust estate by the Trustee be charged against the corpus of the estate, and that all real estate commissions heretofore paid for the collection of rents be returned to this respondent out of the corpus of the estate, and that all amounts expended in improvements or repairs of the real estate be returned to this respondent out of the corpus of the trust."

Salome King Linenthal and Harvey King, two of the remaindermen, respondents in the original bill, filed separate answers thereto wherein they admitted that certain properties of the estate probably needed rehabilitation, but averred that the cost thereof should be paid out of the income and not out of principal.

The above-named remaindermen demurred to the cross bill of Mrs. Warriner. The said demurrers were properly overruled by the trial court. The said cross bill did not show on its face that costs of all repairs and improvements were properly chargeable to income. §§ 86, 87, Title 58, Code 1940. That the cost and expense incident to the management of the estate by the trustee, appointed by the court, should be paid out of the corpus of the estate was expressly held by this court in Frye v. Community Chest, supra.

The answer of remaindermen Mrs. Salome King Linenthal and Harvey King filed to the cross bill took the same position as their answers filed to the original bill,

namely, that the cost of rehabilitating the property should be a charge against the income of the life tenant and not against the corpus of the estate.

The trial court in its decree ordered that the trustee should repair and maintain the real estate in a tenantable condition and to that end authorized the making of necessary repairs. As to payment of the cost of such repairs the decree provided:

"The costs of repairs in the nature of permanent improvements, that is such repairs as re-roofing in whole or in part (as distinguished from roof patching) replacing substantial amounts of flooring, siding, sills, joists and the like, replacing plumbing or a substantial part of a wiring system, all outside repainting necessary or proper for the protection of the improvements, etc., shall be paid from the principal of said estate, and refunded from income as hereinafter provided. All ordinary repairs, such as unstopping of plumbing, replacing broken glass, inside painting, or repapering, repairing of leaks, and the like, shall be chargeable to the life tenant and shall be paid from the income of said estate.

"That permanent improvements (as herein described) heretofore or hereafter made shall be by the trustee initially paid from the corpus of the estate. However, the trustee is authorized and directed during the life of Mrs. Warriner to repay said corpus from income at the rate of 10% per annum without interest. Any balance due corpus at the death of Mrs. Warriner shall not be a charge against income or her estate. For accounting purposes the Trustee is authorized and directed to initiate the 10% annual payments from income after putting the premises in such state of repair as herein directed."

The trial court also held in its decree rendered in this cause that the fee of counsel for Mrs. Warriner, the life tenant, could not be paid from the corpus of the estate.

The appeal in this case was taken by remaindermen Salome King Linenthal and Harvey King. Their chief contention is that all of the costs incident to repairs and improvements on the property should be paid from income and that the trial court erred in ordering that repairs in the nature of permanent improvements be paid initially from principal even though such payments are to be refunded at a rate of 10 per cent per annum from income from the property during the life of Mrs. Warriner.

The life tenant, Mrs. Nathalie King Warriner, united in the appeal. Her assignments of error, which are treated in brief sufficiently to warrant consideration here, are in substance that the court erred in not decreeing that all the costs incurred in making repairs and improvements should be paid from the corpus of the estate and in refusing to allow solicitor's fees for her solicitor to be paid out of the corpus.

In 1939 the Uniform Principal and Income Act, with slight variations, was adopted in this state. Act No. 572, approved September 19, 1939, General Acts 1939, p. 902. The provisions of said act are now codified as §§ 75–87, Chapter 10, Title 58, Code 1940. Chapter 10, supra, deals with the problems of adjustments of principal and income between tenants and remaindermen, including the question as to how the cost of repairing and improving real property is to be paid. The testator, Sibley P. King, died in 1940, after the effective date of the said Uniform Principal and Income Act, and the provisions of said act, now codified as above indicated, are here applicable unless there is language in the will which directs the manner of such payment or leaves a trustee or other person discretion as to such payment. § 76, Title 58, Code 1940.

We find no such language. The fact that it was held in Frye v. Community Chest, supra, that the cost and expense incident to the management of the estate by an outside trustee should be paid out of the corpus of the estate is not to be understood as a holding to the effect that all of the expenses incident to or connected with the estate should be paid out of the corpus. The will had not provided for an outside trustee, and it was for that reason that we held that the expense incident to the management of the estate by such a trustee should be paid out of corpus. We conclude, therefore, that the provisions of

Chapter 10, Title 58, supra, govern as to how the cost of repairs and improvements is to be paid.

Sections 86 and 87, Title 58, supra, both deal with the payment of expenses, § 86 in cases where there is a "trust estate" and § 87 where "no trust has been created."

■ Under both sections costs incurred in connection with making "ordinary repairs" to the property are to be paid out of income. We are in accord, therefore, with that part of the decree of the trial court which provides as follows: "All ordinary repairs, such as unstopping of plumbing, replacing broken glass, inside painting, or repapering, repairing of leaks, and the like, shall be chargeable to the life tenant and shall be paid from the income of said estate."

But §§ 86 and 87, Title 58, supra, have different provisions as to payment of costs for "an improvement representing an addition of value to property" as distinguished from ordinary repairs.

Under § 86, Title 58, supra, which has application where there is a "trust estate," such costs are payable from principal, but the trustee "shall reserve out of income and add to the principal each year a sum equal to the cost of the improvement divided by the number of years of the reasonably expected duration of the improvement."

Where "no trust has been created" and § 87, Title 58, supra, is applicable such costs are to be paid by the tenant where the "improvement cannot reasonably be expected to outlast the estate of the tenant." But if the improvement can be reasonably expected to outlast the estate of the tenant, only a portion of the cost of the improvement is to be paid by the tenant and the remainder by the remaindermen. That portion which the tenant is to pay is ascertained by "taking that percentage of the total which is found by dividing the present value of the tenant's estate by the present value of an estate of the same form as that of the tenant except that it is limited for a period corresponding to the reasonably expected duration of the improvement. The computation of present values of the estate shall be made on the expec-

tancy basis set forth in the American experience tables of mortality and no other evidence of duration or expectancy shall be considered." § 87, Title 58, Code 1940.

The trial court evidently concluded that a "trust estate" is involved in the instant case within the meaning of that term as used in § 86, Title 58, supra, inasmuch as the decree provides that the cost of improvements of a permanent nature is to be paid initially from principal, but that principal is to be refunded for such expenditure out of income at the rate of 10 per cent per annum without interest. It does not appear how the trial court arrived at the conclusion that the amount refunded each year should equal 10 per cent of the amount expended from principal, as we are unable to find any evidence which tends to show the expected duration of the improvements. As before pointed out, under § 86, Title 58, supra, the amount to be refunded annually is to be determined by dividing the cost of the improvements by the number of years of the reasonably expected duration of the improvements.

■ But we are of the opinion that a "trust estate" within the meaning of § 86, Title 58, is not here involved, and that, therefore, the cost of improvements of a permanent nature, as distinguished from ordinary repairs, should be paid in accordance with the terms of § 87, Title 58, supra.

■ It is true that the relationship of life tenant and remainderman is in itself a trust relation in the broad sense that the life tenant cannot injure or dispose of the property to the injury of the remainderman. Amos v. Toolen, 232 Ala. 587, 168 So. 687; Burden v. Neighbors, 232 Ala. 496, 168 So. 887. But the fact that § 87, Title 58, supra, was enacted clearly indicates that § 86, Title 58, supra, was not intended to include that kind of relationship. Nor does the fact that the testator provided in the will that Mrs. Warriner was to take "as trustee" change the character of trust from that inhering in the relationship of life tenant toward the remainderman. In Frye v. Community Chest, supra [241 Ala. 591, 4 So.2d 147], in considering the effect of such declaration, it was said: "The

will, as before noted, bequeaths this property to the life tenant 'as trustee.' This, as we have held, is an express declaration of a trust relation, further evidencing that the first taker has a life estate only. We do not hold this means a different character of trust from that inhering in the position of a life tenant toward the remaindermen, often deemed a quasi trust because it is [in] connection with the property rights of a life tenant."

 We are also of the opinion that § 87, Title 58, supra, has application in a case like this where a trust is created by a court of equity in the exercise of its inherent power under the law of trusts to make such orders touching properties within its jurisdiction as will protect all interests.

We conclude, therefore, that the cost of improvements of a permanent nature should have been apportioned in accordance with the provisions of § 87, Title 58, supra.

We agree with the finding of the trial court that counsel fees for the life tenant, Mrs. Warriner, are not properly payable out of the corpus of the estate. The original bill in this case was filed by the trustee and the main purpose of the bill filed by the life tenant was to increase the amount of money which she receives from the income of the property rather than for the protection of the trust estate.

The decree of the circuit court in so far as it held that the cost of making ordinary repairs to the property must be paid out of income and in so far as it held that the fees of counsel for Mrs. Warriner, the life tenant, could not be paid out of the corpus of the estate, is affirmed; but that part of the decree relating to the apportionment of costs between the life tenant and the remaindermen for making improvements of a permanent nature is reversed and remanded. Let the costs of the appeal be paid out of the corpus of the estate.

Affirmed in part and in part reversed and remanded.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.

## On Rehearing.

The trial court in its decree held: "The said trustee is hereby authorized to employ a real estate rental agent, or agents, for the real estate owned by said estate, to rent and collect the rents therefrom, and the trustee is hereby authorized to pay said agent or agents, the regular commission provided for under the rules and regulations of the Birmingham Real Estate Board and all commissions so paid shall be charged to the corpus of the estate, in accordance with directions of the Supreme Court in the case of Frye etc. v. Community Chest, etc., 241 Ala. 591, 4 So.2d 140."

In the case cited by the trial court, this court expressly held that the costs and expenses incident to the management of the estate by an outside trustee should be a charge on the corpus of the estate and not go in diminution of the income of the life tenant. This conclusion was based on the intention of the testator as expressed in Item 4 of the will. We hold, therefore, that the trial court correctly provided that the commissions paid to the real estate agents in connection with the management of the estate should be charged to the corpus of the estate.

Application for rehearing overruled.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.