40 So.2d 434

### FIRST NAT. BANK OF MOBILE v. WEFEL et al.

I Div. 343.

Supreme Court of Alabama.
May 13, 1949.

C. B. Arendall, Jr., of Mobile, for appellees.

Vickers, Leigh & Thornton, of Mobile, for appellant.

FOSTER, Justice.

The question in this case is whether the principle of tree farming is to be given effect in ascertaining income payable to a beneficiary of the income from land for life or for years under circumstances which do not justify waste pending the existence of such rights.

The land consisted of 10,559 acres bought by the testator with other lands about 1902 at $1 per acre. He was said to be a pioneer tree farmer, and sold off all the land which he considered unsuitable for tree farming and all that he considered suitable for ordinary farming. It was cut-over land. Testator died in 1933. At that time there was no timber on the land of commercial value. Without giving too much detail prior to 1917, that year he and other members of his family acquired all the stock in a corporation, Southern Alabama Lumber Company, except one share, and all this land was conveyed to that corporation. At that time testator owned forty-nine and one-half percent of the stock, and also one-third of the stock of another corporation, Southern Alabama Land Company, which owned sixteen and one-half per cent of the stock of the Southern Alabama Lumber Company.

At the time of testator's death in 1933, the total value of the land was approximately $50,000, so that testator's interest as the holder of forty-nine and one-half per cent of the stock of the lumber company was worth approximately $25,000 at the time of his death.

Testator by will created a trust by which the income from his estate was provided for named children, one for life and two for years.

Testator had been interested for ten or twelve years in buying and selling timber land and in growing and selling timber. His policy was, since the land had never been cleared and cultivated for ordinary farming, to sell the timber of commercial value at such intervals as its condition justified from different parts of the land so that there was a sale every year from some parts of it. But he always left two large trees on each acre to grow and distribute seed. He held to the theory that on such land that method of natural reforestation was better than transplanting seedlings. His success demonstrated his wisdom, and was approved by some experts.

From 1922 to 1929, he so managed the corporation as that it made sales of timber and turpentine rights as follows:

| "Year | Gross Proceeds |
| --- | --- |
| 1922 | $ 6,534.27 |
| 1923 | 12,338.83 |
| 1924 | 4,256.51 |
| 1925 | 5,894.13 |
| 1926 | 1,611.05 |
| 1927 | 6,341.82 |
| 1928 | |
| 1929 | 1,250.59" |

After his death the trustee likewise managed the corporation. But in 1935, the trustee joined with the other holders of stock in the lumber company in liquidating it, so that each stockholder received his proportionate interest in the land instead of holding stock in the lumber company. From that arrangement the trustee received an undivided forty-nine and one-half per cent interest in the land; and the land company received a sixteen and one-half per cent interest, and the trustee retained one-third of the stock of the land company, which it still holds.

Since such liquidation the owners have made annual sales of stump wood and timber to the extent that the trustee has received on account of said forty-nine and one-half per cent interest approximately $50,000 prior to July 25, 1947, and also dividends from the interest of decedent in the land company periodically as they were declared, derived from such sales. The amount of such dividends was distributed as income, but the proceeds of sales representing said forty-nine and one-half per cent interest have been held by the trustee as additions to the corpus. This proceeding does not seek to change that status of those amounts.

But on July 25, 1947, the trustee entered into a contract with others for the sale of all the pine trees on the land measuring seven inches and up at the stump on the date of the contract, or which shall attain such size during the five year period provided for its removal, leaving two round pine trees per acre larger than seven inches in diameter at the stump for seed trees. The total consideration was $105,-590.00 paid in cash. Of this amount the forty-nine and one-half per cent interest of the trustee was the net sum of $49,-008.63. The trustee is uncertain whether this is income under the trust instrument and due to be paid to the income beneficiaries, or whether it is corpus to be held as such. The income beneficiaries are claiming it. This suit is to determine its status. The trial court held it to be income and the trustee has appealed. The holders of the remainder interest are also parties, and do not appeal.

It is also alleged that the dividend declared by the land company on account of receipts from said transaction of July 25, 1947, which were paid to the trustee, has been treated by the trustee as income of the trust estate and distributed to the income beneficiaries.

The agreement of July 25, 1947, also contains a provision whereby the purchaser shall pay an annual rental of $1 per acre for the use of the land during said period of five years, and agrees to use reasonable care and diligence to prevent damage to young trees left on the land. The trustee is alleged to be entitled to receive on account of said rental for use of the land approximately $5,000 per annum on account of said forty-nine and one-half per cent interest in the land. A proper allocation of that as between income and corpus does not seem to be involved, and was not included in the final decree, and is of easy solution.

So-called tree farming is a relatively recent industry in this part of the Country. It has received no legal status in Alabama as such, except as it may be affected by Title 58, section 83, Code of 1940, which became effective by an Act approved September 19, 1939, General Acts 1939, page 902.

But we cannot give effect to that statute as here controlling for the reasons given in First National Bank of Birmingham v. Jaffe, 239 Ala. 567, 196 So. 103, and First National Bank of Tuskaloosa v. Hill, 241 Ala. 606, 4 So.2d 170. See, also, Gelfert v. National City Bank of New York, 313 U.S. 221, 61 S.Ct. 898, 85 L.Ed. 1299, 133 A.L.R. 1467; Linenthal v. Birmingham

Trust & Savings Co., 249 Ala. 631, 32 So. 2d 368, 175 A.L.R. 1426. The trust will which created the property rights here involved became operative as of October 15, 1933, when testator died.

Unless we apply the principle of tree farming, the proceeds of the sale of the timber in question should be classified as corpus, since it was not for the purpose of clearing land, repairing buildings or fences, or firewood. Westmoreland v. Birmingham Trust & Savings Bank, 214 Ala. 593, 108 So. 536, 46 A.L.R. 1201; Jones v. Sandlin, 205 Ala. 67, 87 So. 850; Guest v. Guest, 234 Ala. 581, 176 So. 289; Alexander v. Fisher, 7 Ala. 514.

But there has grown up an exception to this rule originating in England, and adopted in some states in this Country, and apparently disapproved by none who have had occasion to treat it. The exception applies to estates which were cultivated by the settlor and this custom has continued after his death, to produce salable timber where the timber is cut periodically. The reason assigned is that protecting and cutting timber periodically and pursuing a system of reforestation is a mode of cultivation, and such product is not then a part of the inheritance but part of the so-called annual fruits of the land; and in such cases the same kind of cultivation may be carried on by the tenant for life that has been carried on by the settlor; and the timber so cultivated and cut periodically is looked upon as annual profits of the estate when reforestation is pursued and therefore goes to the tenant for life. In England: Honywood v. Honywood, L.R. 18 Eq. 306; Dashwood v. Magniac, 3 Ch. (Eng.) 306, 60 L.J. Ch. N.S. 809, 65 L.T.N.S. 811; Cowley v. Wellesley, 35 Beav. (Eng.) 635. And in this Country: Macaulay's Ex'r v. Dismal Swamp Land Co., 2 Rob. 507, 41 Va. 507; Ballentine v. Poyner, 3 N.C. 110; Lee & Bradshaw v. Rogers, 151 Ga. 838, 108 S.E. 371; Williard v. Williard, 56 Pa. 119; Poole v. Union Trust Co., 191 Mich. 162, 157 N.W. 430, Ann.Cas.1918E, 622; Carr v. Carr, 20 N.C. 317; Bartlett v. Pickering, 113 Me. 96, 92 A. 1008. See, 21 A.L.R. 1012, et seq; 33 Am.Jur. 825, section 323.

This principle has been held to apply to life beneficiaries of a trust, and to income from mining operations. In re Knox's Estate, 328 Pa. 177, 195 A. 28, 113 A.L.R. 1185.

The principle appears to us to be logical and with a proper understanding of what income is as applied to land unproductive of income in other respects, especially when the settlor had himself so operated it before creating the trust.

We think the result therefore depends upon a finding of fact in each separate instance.

The evidence was taken before the trial judge, and he found the facts as follows:

"It further appearing to the court, and the court finding, that for many years prior to his death, Herman H. Wefel, Jr., had managed the ten thousand five hundred fifty-nine (10,559) acres of land referred to in the instrument of sale and lease dated July 25, 1947; that said decedent was a pioneer in developing the practice, now widespread of using cut-over lands for the purpose of growing trees thereon and, from time to time, of making sales of the trees and other wood products grown by such husbandry of the soil; that, under the direction of said decedent, said ten thousand five hundred fifty-nine (10,559) acres of land was used, for many years prior to the death of said decedent, for such purposes; that said land had been cut-over many times prior to the death of said decedent and, because of the reforestation practices pursued by him, was a continued and periodic source of revenue, derived from sales of the products of said land; that said decedent regarded and treated the profits realized on the sales of the trees and other wood products of said land as income; and

"It further appearing to the court, and the court finding, that the sale of timber made on July 25, 1947, like the sales made under the direction of said decedent during his lifetime, constitutes a continuation of the decedent's practice of so devoting said land to the growth of trees that there will be a continued reforestation of said land; that such cutting, from time to time, of

the products of said land constitutes the most profitable use to which it can be devoted and does not constitute waste under modern conditions; and

"It further appearing to the court, and the court finding, that the income beneficiaries of the trust established under Item Seven of the will of said decedent have consented that the proceeds of all sales made prior to said sale of July 25, 1947, may be placed in the corpus of said trust estate; that it was the intent of said decedent, as manifested by his will, that the proceeds of said sale and lease of July 25, 1947, should be treated by the trustee as income from the trust estate and that all other sales of trees and other wood products of said lands, hereafter derived by the trustee by virtue of the continuation of the usage of said lands as a tree farm, should be similarly treated by the trustee."

■ Upon the basis of such finding, he decreed that the proceeds of the sale of timber under the contract of July 25, 1947, constitute income from the trust estate and distributable to the income beneficiaries as other distributions of income, and that all other sums from additional sales made from time to time of timber, trees, wood, turpentine rights or other such wood products from said tract of land in such manner as to constitute a continuation of the practice followed during the lifetime of decedent of using said property as a farm for the growing of trees, and in such manner as to provide for the continued reforestation of said land, shall be treated as income by the trustee. Also that in accordance with the agreement of the income beneficiaries, the trustee will continue to treat as a part of the principal of the estate the proceeds of all sales of wood products made by the trustee prior to July 25, 1947. Having made such finding of facts, as to which no question is raised on this appeal, we think the decree of the trial court properly applied the law to the facts.

■ There is also some question raised as to whether the remote contingent remaindermen have been sufficiently made parties. The income beneficiaries are the three children of testator. Two are daughters who are to receive each one-third of the income for twenty years, or to their lineal descendants. One is a son who is to receive one-third of the income for his life. At the time of distribution after the precedent rights terminate the share of each daughter is to be distributed to her, if then living; if not, to her lineal descendants. And the share of the son is to be distributed at the time of the death of the son to his lineal descendants. All three of them are presently alive. The widow died in 1936, and is "out of the picture." The daughters are Dorothy Louise Matthews and Mary Elizabeth Henderer, and the son is Herman H. Wefel, III. So that their lineal descendants are contingent remaindermen. This would of course include certain after born members of a class which have an interest. The bill alleges that the identity of all the persons who will ultimately be entitled to receive distributions of income and/or principal has not been and cannot now be ascertained, but that plaintiff has endeavored to join all persons now in being who have or may have or may claim any beneficial interest under said trust. Dorothy Louise Matthews has three children now living who may be her sole lineal descendants when she dies. Mary Elizabeth Henderer does not now have any lineal descendants in being. Herman H. Wefel, III, has no natural children, but one adopted child, Mary Rutherford Wefel, who has no descendants. Betty Mary LaPenna, a daughter of Dorothy Louise Matthews, has a minor child about three months old. All those persons are made parties personally and as representatives of the class to which they may or do belong, and as representatives of such persons in being or not in being who may at any time belong to any class whose rights may be affected hereby.

The minors named in the bill as contingent remaindermen and all such as may be hereafter born belonging to such a class are represented not only by the adult members of their class but also by a guardian ad litem.

Appellant also assigns the decree as error in not properly protecting unknown or unborn contingent remaindermen, and

218

refers to Equity Rule 31, Code 1940, Tit. 7 Appendix. This rule refers to persons of a class too numerous to bring them all before the court. That is not this situation. All living persons who are directly, contingently or remotely interested are made parties. The question relates to those who may be yet born into a class having an interest in remainder either of the income or corpus. But we think they are sufficiently protected on the principle of virtual representation. Ussery v. Darrow, 238 Ala. 67(7), 188 So. 885, and cases there cited.

The decree of the trial court was in accordance with principles which we approve, and it is affirmed.

Affirmed.

BROWN, LAWSON, and STAKELY, JJ., concur.