## ALEXANDER, ET AL. v. FISHER.

1. A tenant in dower, in this State, has the right to change woodland into arable, if the proportion of woodland is such, that a prudent farmer would consider it best to reduce a portion of it to cultivation; and the general criterion by which to détermine whether waste has been committed, is where lasting damage has been done to the inheritance, or its value depreciated.

2. Such a tenant, however, has not the right at pleasure, to cut down or otherwise injure the growing timber, although she is entitled to what is necessary for firewood, and for the repairs of buildings and fences, on the dower lands.

3. *Quere?*—*If she has the right under any pretence to destroy groves of timber, or trees planted for shade or ornament—but when such are destroyed, Chancery will not decree compensation, in the absence of proof of value.*

Writ of error to the Court of Chancery for the 12th district of the Southern Division.

The bill is filed by the heirs at law of Edmund Alexander, deceased, against Fisher, who intermarried with the widow of said Alexander, to restrain him in committing waste in certain lands, which were attached as dower to his wife, as the widow of the said Alexander.

The dower lands consist of four hundred and ninety-eight acres, including the late residence and dwelling house of Alexander, about two hundred acres of which are alledged to be cleared, and under fence, for cultivation, and the remainder uncleared and uninclosed, with the exception of some small portions of lots or pasture grounds. The waste is asserted to have been committed in cutting down and clearing, in the year 1841, of ten or more acres of the woodlands; in pulling down and removing a line of fence inclosing the old lands; in destroying a fine grove of walnut timber; and in doing considerable damage to the growing timber.

It is also asserted that the uncleared lands are broken, composed of light and sandy soil, which will soon be destroyed by cultivation, and that Fisher, when requested by one of the complainants to stop this waste, declared, that he should cut, and clear, as he pleased, and work the lands with a view to his own interest, disregarding that of those who might come after him, and that at the time of filing the bill, he was preparing, by cutting out the undergrowth, to clear more land.

It is asserted, the grove of walnut trees alledged to have been destroyed, was left by Alexander, to break the fogs and damps arising from the river, the grove lying between that and the mansion. Some of the lands cleared by Fisher, it is alledged, were enclosed in lots, for pasture, and the trees left for timber, shade and ornament, and those he is about to clear are adjacent to those last described.

The answer admits that Fisher holds the lands described as the dower estate of his wife; that one hundred and eighty acres is cleared land, but was not under a sufficient fence to warrant its cultivation, unless repaired. In the fall of 1841, or the early part of 1842, he cut down 6 28-100 acres for the purpose of procuring fire wood, and getting rails; which land is, at the time of his answer, in cultivation. The south line of the land allotted for the dower of his wife, runs nearly east and west, and passes the plantation, or cleared part of the lands; this line is about three-eighths of a mile long, and is the boundary on the south; it was without a fence, and in order to cultivate that part of the plantation, one was necessary the entire length of the line; this fence either had to be made with new rails, or from those taken from some other part of the plantation, and when

made, inclosed about one hundred acres of the dower lands. On the north side of this piece of land, there was an old fence, which the defendant removed, and put up on the south line, above described, and with which he inclosed the entire field. Some walnut trees were growing along this old line of fence, and those, together with all the growth on the old line of the fence, were cut down, and the land prepared for cultivation. These walnut trees were from six to eight inches in diameter, and none of them were nearer than three hundred yards of the house. It was necessary to repair the fences on the farm, and for this purpose many new rails were required. The defendant had no other means of getting them, than from timber growing on the dower land, and the farm would have been valueless to him without these repairs. He asserts, that he has erected gates, and added other improvements on the land, and has managed it in a prudent manner, so that his possession of it, has added to its value at least five hundred dollars. He admits that a part of the land is rolling, but insists that other portions are level, and not likely to be soon injured by cultivation. When one of the complainants informed him of the desire of the heirs, that no timber should be cut, he may have said that he intended to enlarge the farm, but he denies that he has committed waste, or has any intention to do so. He expects to clear some of the land for cultivation, and has cut a part of the small growth for firewood, on that part intended to be cleared, and insists upon his right to do so.

He alledges ignorance of the intention with which the walnut trees were planted, but insists they were useless to keep the fog arising from the river from the dwelling house, as the river was north from the house, and the trees south; neither could they make a shade for the dwelling, or be an ornament to it, inasmuch as they were at too great a distance for a shade, and out of view from the house, as there was a pond between that and the trees, in which grew large oaks, which prevented the walnut trees from being seen.

With respect to the inclosed lots, charged in the bill as matters of waste, the defendant insists, that one of them was a horse lot, near the negro houses, and distant two hundred and fifty or three hundred yards from the dwelling house. This lot he considered as injurious to the health of his slaves, and

therefore he put it in cultivation; it contains about an acre of land, and some oak trees growing upon it have been deadened. He insists further, that a considerable portion of the cleared lands allotted as dower, has been cleared for a long time, and that some of it is worn out, and that, unless he is permitted to clear other land for cultivation, the estate will be of little or no value to him.

The answer concludes with a demurrer to the bill, showing for cause, that his wife is not made a party defendant to it.

Several witnesses were examined, but their testimony, in the main, sustains the case made by the defendant's answer, except, that the weight of evidence is, that there is something to fear on the score of health, from cutting down the timber nearest the house, and that the trees cut down added somewhat to the beauty of the place.

The Chancellor considered that no waste had been committed in a legal sense, and refused to enjoin the defendant from clearing more land, as it was not shown that it was intended to reduce the proportion of woodland improperly.

The bill having been dismissed, the complainants insist here, that they are entitled to an injunction against further waste, as well as compensation for that already committed.

Thos. Williams, Jr. for the plaintiff in error.

R. Saffold, contra.

GOLDTHWAITE, J.—We can perceive nothing in the proof in this cause, or in the admissions of the answer, which will warrant a different decree from that rendered by the Chancellor.

It is true, that in England, it is waste for a tenant in dower to convert woodland into arable, Coke on Litt. 53, b.; but it is evident that the rules which govern and define waste in an old, well settled, cultivated country, have either no application, or at best a very remote one, to a new country, where the timber is of little or no value, and where its destruction is always the preliminary to successful cultivation. Even in England, that which is waste by a tenant in one county, is not always so in another. So, too, with us, it is very evident that in some parts of the State, a destruction of timber would be of lasting

injury to the inheritance, whilst in other parts, the same act would be beneficial.

A number of adjudications have been made in our sister States upon this subject, which show that the subject matter is capable of no general and fixed rule, from the great diversities which exist between the several States, both with respect to the articles produced, as well as in the manner of cultivation : to say nothing of the different and relative values of lands and timber. [Findlay v. Smith, 6 Mun. 134; Cranch v. Puryear, 1 Rand. 258.] In Hastings v. Crankleton, 3 Yeates, 261, the Court held that a tenant in dower may clear woodlands, if the land cleared bears a proper relative proportion to the whole tract. To the same effect is Parkins v. Coxe, 2 Haywood, 339 ; and we presume many other cases involving the same principle may be found in the reports of other States.

The Supreme Court of Tennessee, in Owen v. Hyde, 6 Yerg. 334, assert, that the general criterion by which to determine whether waste has been committed, is, to ascertain whether lasting damage has been done to the inheritance, or its value depreciated. That Court also recognized the right of a tenant in dower, when the land of the dower estate was old and worn, to clear new land, if the proportion of woodland was such that a prudent farmer would consider it best to reduce a portion of it to cultivation, thereby to relieve the old land from excess of cultivation. We entirely concur in this view of the law of waste, as peculiarly applicable to many parts of our own State.

2. It is proper, however, to remark, that we desire not to be understood as asserting, that a tenant in dower, has the absolute right, at pleasure, to cut down or otherwise destroy the growing wood upon the dower lands. Doubtless all such tenants are entitled to house bote, fire bote, and fence bote ; in other words, to the timber necessary for fire wood, and for the repairs of the buildings and fences upon the dower lands; but beyond this, it seems that the tenant's right does not extend, except it be within the rule before recognized, to wit : that the change from woodland into arable, is productive of no lasting injury to the inheritance.

It will probably be found also, that such a tenant has no right, under any pretext, to destroy groves of timber, or trees

planted for shade or ornament; and with respect to the walnut trees, spoken of in the pleadings, if the allegations of the bill had been supported, and they had been of any determinate value, the heirs might have been entitled to compensation. But the proof leaves it doubtful whether the ancestor planted them for any definite purpose; and there is an entire absence of proof as to any value, for which Chancery will entertain a bill for compensation.

We are satisfied that the Chancellor came to the proper conclusion, and his decree is affirmed with costs.