Rutherford *v.* Wilson.

## Opinion delivered May 30, 1910.

1. Life estate—right to cut trees.—A life tenant is authorized to cut growing trees only when necessary to the proper and reasonable enjoyment of his life estate in conformity with good husbandry. Thus he may clear land for the purpose of putting it in cultivation provided the cleared land as a whole, as compared with the wooded tract left, does not exceed the proportion of cleared to wooded land usually maintained in good husbandry, and provided further that he does not materially lessen the value of the inheritance. (Page 247.)

2. Same—cutting timber for sale.—A life tenant is not authorized to cut growing timber merely for purposes of sale. (Page 248.)

3. Same—waste—burden of proof.—In a suit against a life tenant to hold her liable for waste in cutting growing timber the burden of proving that the timber was wrongfully cut is on the plaintiff. (Page 249.)

Appeal from Independence Circuit Court; *Charles Coffin,* Judge; affirmed.

*Samuel M. Casey,* for appellant.

In no case is the tenant allowed to cut wood for sale unless this is the customary mode of using the land. Tied. on Real Prop., § 74. And this rule applies to a dowress. 4 Kent, Com. 76. The cutting and selling of timber by a life tenant is waste for which the reversioner may sue. 92 Am. St. R. 621; 53 Am. Dec. 621. The timber can only be cut or used for the proper enjoyment of the estate for life, and not merely for sale. 63 Ark. 15. A verdict should have been directed for plaintiff, for defendant failed to make out a defense. 35 Ark. 147; 69 Ark. 562. The verdict is so palpably against the evidence as to shock the sense of justice of a reasonable person. 70 Ark. 386. It is error to give conflicting instructions. 74 Ark. 44; 72 Ark. 14; *Id.* 440.

*Oldfield & Cole,* for appellee.

In America a life tenant may cut and remove timber for the purpose of putting the land in cultivation. 63 Ark. 15; 14 Tenn. 334; 27 Am. Dec. 467; 33 S. W. 293; 59 Wis. 557; 18 N. W. 527; 2 Am. Dec. 258; 5 *Id.* 258; 72 *Id.* 721; 1 Tiffany on Real Prop., 564. The burden is on the remainderman to show that the life tenant went beyond her rights in cutting the timber. 72 Am. Dec. 721. There is some testimony

to support the finding of the jury that the purpose of the life tenant was to clear the land, and that is sufficient here. 67 Ark. 399; 73 Ark. 377; 75 Ark. 111; 82 Ark. 188; 84 Ark. 74; 89 Ark. 321. Before plaintiff could recover anything it was incumbent on him to show that his reversionary interest had been damaged. 63 Ark. 15; 21 N. C. 631; 14 Tenn. 334; 27 Am. Dec. 467; 11 Vt. 293; 63 N. W. 368; 33 S. W. 561. If the trees were dead or dying, their removal could not injure the inheritance. 99 N. C. 583; 1 Atl. 308; 11 Vt. 293.

McCulloch, C. J. A tract of land in Independence County, containing 229.32 acres, was assigned to the defendant, Mrs. Angie Wilson, as dower out of the estate of her deceased husband, about 150 acres of this tract being cleared and in cultivation, and the remainder being woodland. Plaintiff, W. A. Rutherford, is the owner of the reversion.

In the year 1907 defendant sold and allowed to be removed the timber on 20 or 25 acres of the woodland, for which she received the sum of $104.77, its market value; and in February, 1909, plaintiff instituted this action against her to recover said sum so received, alleging that she committed waste by removing the standing timber; and that the freehold was damaged to that extent. A trial before a jury resulted in a verdict for defendant, and plaintiff appealed.

The evidence shows that the land from which the timber was removed is tillable, but that it had not been put in cultivation at the time of the trial, except a small part—something less than an acre. It will be ready for the plow as soon as the brush and undergrowth is burned. Defendant testified that she sold and allowed the timber to be cut so that she could put the land in cultivation as soon as practicable, and that she is proceeding to put it in cultivation.

This court, in the case of *McLeod* v. *Dial,* 63 Ark. 10, laid down the following rule as to the rights of a life tenant: "He had no right to cut trees growing on this portion of the land, or allow them to be cut, except so far as was necessary to the proper and reasonable enjoyment of his life estate in conformity with good husbandry. For the purpose of using it as farming land, he had the right to clear a part of it, provided such part and that already prepared for cultivation, as compared with the remainder of the tract, did not exceed the proportion of cleared

to wooded land usually maintained in good husbandry; and provided, further, that he did not materially lessen the value of the inheritance. He also had the right to cut and use so much of the timber standing on the one-half which belonged to his wife as was necessary for fuel, and for making and repairing fences and buildings on the same. But the timber could only be cut or used for the proper enjoyment of the estate for life, and not merely for sale." Citing *Davis* v. *Clark,* 40 Mo. App. 515; *Owen* v. *Hyde,* 6 Yerger 334; *Jackson* v. *Brownson,* 1 John. 227; *Clemence* v. *Steere,* 1 R. I. 272; *Ballentine* v. *Poyner,* 2 Hayw. 110; 1 Washburn, Real Property, pp. 146, 148. The same rule has been stated by this court in subsequent cases. *Nashville Lumber Co.* v. *Barefield,* 93 Ark. 353; *Cherokee Const. Co.* v. *Harris,* 92 Ark. 260.

Now, measured by the law thus announced, it was a question for the jury to determine whether or not the removal of the timber amounted to waste, and constituted an injury to the inheritance. What is "good husbandry" is not always easily determined, as that depends on the peculiar facts and circumstances of each case. The whole tract contained 229.32 acres, with about 150 acres already in cultivation. With 20 or 25 acres more in cultivation, there would be left 55 or 60 acres of woodland. This may be sufficient to afford firewood and material for repairs, such as fenceposts, rails, boards or even lumber with which to build houses. That, of course, depends on the amount and kind of timber. We can not say that the jury were unwarranted in finding that it would be good husbandry to put the additional quantity of land in cultivation.

Another element of the inquiry is the relative value of the land and the timber. There is nothing to show that this land is chiefly valuable for timber. On the other hand, there is testimony to the effect that the land is not injured by removing the timber and putting it in cultivation, and that it will be a benefit to the freehold, in point of value, to remove the timber and put the land in cultivation. All of the land is tillable, so the witnesses say, and the value of the timber on the 20 or 25 acres was only $104.77.

The jury were also warranted in finding that the defendant sold the timber, not for profit, but for the purpose of imme-

diately putting the land in cultivation. She did not do that at once, but it is not essential that it be done within any given time. There may be more or less delay in getting land ready for the plow, even after the timber was removed. It may not be poor husbandry to wait for the roots to decay and for the land to dry out to some extent after the timber is removed, before commencing to cultivate. Defendant testified that a considerable part of the land would be ready for the plow as soon as the brush was burned off; and at the time of the trial her tenant was going ahead with the clearing. Under all the facts and circumstances of the case we think it was peculiarly a question for the jury to decide whether or not waste had been committed. There being evidence to sustain the verdict, we are not concerned with its weight, for that was within the province of the jury.

The instructions of the court were, we think, within the principles of law herein announced, and we find no error in the proceedings. It devolved on the plaintiff to show that waste had been committed to his injury, and the amount of damage, if any, to the freehold. This includes the burden of proving that the alleged act of the life tenant was not rightfully done, for the presumption is in favor of the latter until the contrary appears from the evidence. 30 Am. & Eng. Enc. Law, 304; *Lynn's Appeal,* 31 Pa. St. 44.

Judgment affirmed.