RIGGIN v. HOGG et al. (7 Div. 961.)

(Supreme Court of Alabama. May 15, 1919. Rehearing Denied June 4, 1919.)

1. TRESPASS ⬅52—INJURY TO LAND—MEASURE OF DAMAGES.

In an action for trespass quare clausum fregit, claiming injury to land by destroying trees growing thereon, the measure of damages is the difference between the value of the land before and after the trespass, and not the value of timber destroyed.

2. TRESPASS ⬅40(5)—PLEADING—CLAIM FOR DAMAGES.

That a complaint in an action for trespass injuring land alleges that timber was cut, injured, and removed does not constitute a claim for damages as for the value of the timber.

3. APPEAL AND ERROR ⬅209(1) — RESERVATION OF OBJECTIONS—SUFFICIENCY OF EVIDENCE.

In trespass quare clausum fregit, where injury to land by destruction of timber is alleged, the insufficiency of the evidence as to damages to sustain a judgment for plaintiff will not be considered, in the absence of an objection to the evidence, verdict, or judgment, motion for new trial, or of requested instructions.

4. TRESPASS ⬅45(2) — EVIDENCE — ADMISSIBILITY.

In trespass for injury to land by the destruction of trees, it was not error to allow the surveyor to testify that he surveyed the land claimed by plaintiffs.

5. TRESPASS ⬅45(2) — EVIDENCE — ADMISSIBILITY.

In trespass for injury to land by the destruction of trees, it was not error to allow evidence that the surveyor had the deed to the land when he surveyed the land, and called attention to the peculiarity in the description thereof.

6. ADVERSE POSSESSION ⬅33 — EVIDENCE — ADMISSIBILITY.

In trespass claiming damages for injury to land by the destruction of trees, proof that the land was known in the community as the "H.

――――――――――――――――――――――
⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

land," H. being plaintiff's name, was admissible to show notoriety of possession.

7. TRESPASS ⬦45(2) — EVIDENCE — ADMISSIBILITY.

In trespass, claiming damages for injury to land by destruction of trees, a deed describing only a part of the land in question was not inadmissible because it did not describe all of it.

8. DEEDS ⬦38(4)—DESCRIPTION—CERTAINTY.

The description in a deed, "the northwest half of the northwest quarter" of a given section of land, *held* not void for uncertainty.

Anderson, C. J., and McClellan, J., dissenting.

Appeal from Circuit Court, St. Clair County; O. A. Steele, Judge.

Trespass by John F. Hogg and others against Henry Riggin. Judgment for plaintiffs, and defendant appeals. Affirmed.

Embry & Embry, of Ashville, and M. M. Smith, of Pell City, for appellant.

Harsh, Harsh & Harsh, of Birmingham, and W. A. Starnes, of Pell City, for appellees.

MAYFIELD, J. The action was by appellees against appellant and was in trespass. The complaint contained several counts. Some of the counts sought a recovery as for the statutory penalty of $10 for cutting or destroying trees, saplings, etc., growing on certain lands described in the complaint. There were two counts in trespass quare clausum fregit, as to lands described in the complaint. The trial resulted in a verdict and judgment for plaintiffs on the fifth count, which was one of the counts in trespass quare clausum fregit.

[1] The record contains errors, but the most serious ones are waived, not assigned, or not properly presented for our review. The most serious error is the total absence of proof as to the proper measure of damages under the count on which the jury found their verdict. There was evidence as to the measure of damages under the counts to recover the statutory penalty, and that would also measure the damages, if there had been a count in trover or trespass de bonis asportatis, but there was no such count.

The count on which the verdict was alone based is to recover damages as for injury to the lands, and not as for the value of timber or other parts of the realty severed therefrom. All of the evidence as to damages went to show the number and size of the trees severed from the land, the amount of timber taken from or destroyed on the land, and the value thereof, and not the value of the land before and after the trespass, with and without the timber thereon.

The damages claimed in this count is injury done to the land, in consequence of the trespass described and complained of, and not the value of the timber or other property severed from the freehold. These actions of trespass quare clausum fregit and de bonis asportatis are separate and distinct, though they relate and refer to the same wrongful acts, and the same land, if the property is severed from the freehold. In the case of Davis v. Miller-Brent Lumber Co., 151 Ala. 580, 587, 44 South. 639, 641, it was said:

"The only count in the complaint is for trespass quare clausum fregit, and not for trespass de bonis asportatis. Hence the value of the timber had nothing to do with it, but the measure of damages was the injury to the land, or, in other words, the difference between the value of the land before and after the trespass. White v. Yawkey, 108 Ala. 270, 274, 19 South. 360, 32 L. R. A. 199, 54 Am. St. Rep. 159; Warrior Coal & Coke Co. v. Mabel Mining Co., 112 Ala. 624, 626, 20 South. 918; Brinkmeyer et al. v. Bethea, 139 Ala. 376, 378, 35 South. 996."

[2] The mere fact that it is alleged in the complaint that timber was cut, injured, and removed from the land does not constitute a claim for damages as for the value of the timber. It is, as pointed out in the authorities, a mere description of the nature and character of the trespass to the land.

[3] This question, however, is not so presented as to call for a reversal of the judgment. No objection was taken as to the evidence, the verdict, or judgment on this count, and there was no motion for a new trial, and no requested charges seeking to raise this question. It may be that Mrs. Adam Powe has no such interest in the land as will authorize her to recover in this action. The record, however, does not make this question certain. It may be that she inherited the interest of the child of her husband; if so, this would make her a tenant in common with the other plaintiffs, if she did not so inherit, it is not certain that she could maintain a joint action with the heirs of the deceased husband as to this land. As to this, however, we do not now decide, as the evidence is not certain or full as to this feature of the case.

There was no error in allowing Mrs. Powe to testify that she, her children, and her husband were in possession of the land, and claiming to own it, from the time the husband purchased it until the time of trial. These were facts as to which she was shown to be competent to testify.

[4-6] There was no error in allowing the surveyor to testify that he surveyed the land claimed by the plaintiffs. Nor was there error in allowing testimony that the surveyor had the deed when he surveyed the land, and called attention to the fact of the peculiarity in the description of the land. There was no error in allowing proof of the fact that the land in question was known in the community as the Hogg land. Of course such

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

proof is not admissible to prove adverse possession, but it is admissible to show notoriety of the possession—that the possession was open, notorious, etc. There was no offer to limit such proof to such purpose. The objections were general. It is impossible for us to know whether or not there was error in admitting the deeds or other written instruments in evidence, because the deeds, instruments, or copies thereof are not before us.

[7] The irregularity in the description as it is made to appear by recitals in the bill of exceptions was not sufficient to exclude the deed. If the description was as contended, it did describe a part of the land in question; and it could not be excluded because it did not describe all of it. The northwest half of the northwest quarter does describe a part of the north half of the northwest quarter.

[8] As there is some difference of opinion among the members of the court as to whether or not the description, the northwest half of the northwest quarter of a given section of land, is void for uncertainty, it is proper to state our reasons for holding the description valid, and not void.

There may be authorities or dicta which hold such descriptions void for uncertainty on the ground or theory that a square block of land, two sides of which run east and west, and two north and south, has no northwest half; that it is impossible to lay off such tract out of such square block. If there be such authorities or dicta, we are not willing to follow them. The northwest half of the northwest quarter (or of any other known square, the sides of which are east and west and north and south) is just as definite and certain as the north half of the same square, and more easily ascertained and more definitely described.

Let the subjoined square represent the northwest quarter, A D represent the east side, D C the south side, B C the west side, and A B the north side. The line A C passes through the center of the square and divides the square into two

equal right-angled triangles, A B C and A C D. The triangles are equal, because the sides and angles of the one are equal to the corresponding sides and angles of the other. Each triangle is therefore one-half of the square. The line A C is common to both halves or triangles. The triangle A B C is the northwest half of the square, because its other two sides are bounded, respectively, by the north and the west sides of the square. The triangle A C D is the southeast half, because its other two sides are bounded by the south and east sides of the same square.

A line drawn from E to W, passing through the center of the square and parallel with the lines A B and C D, divides the square into two equal rectangles, because the sides and angles of the one are equal to the corresponding sides and angles of the other. The one rectangle is called the north half of the square, because the northern boundary of the half and square are the same. If this one line in common between the rectangle and the square makes this half certain by designating it as the north half, then surely, where the triangle and the square have two sides in common this ought to enable this triangle to be described as the northwest half of the square. It therefore appears that the square is more easily divided into two equal triangles than into two equal rectangles, and that to describe the triangle as the northwest half of the square is more certain than the rectangle by the north half of the square, for the reason that in the one case the triangle has the two sides, the north and the west, in common, while the rectangle and the square have only one side in common; that is, the north side.

It is very true that descriptions by government numbers of lands are usually of pieces of land in squares or rectangles; but it does not follow that similar descriptions may not be applied to triangles, as in the case in hand. It is also true that the north half of the northwest quarter and the northwest half of the northwest quarter do not describe or include the same identical piece of land. They do, however, include or describe in part the same land—a certain 60-acre tract in both; the other 20, however, of each, is different.

This is thought by some to show that there can be no northwest half, because it does not coincide with either the north half or the west half, or both together. That it should coincide with a half or halves of any other description is not at all necessary. That the fact that it does not entirely coincide with any other half tends to its certainty, and not its uncertainty. Several different halves may overlap. The north half and the west half overlap; so does the north half and the east half overlap. The south half and the east half, and the south half and the west half overlap; yet neither of these descriptions is void because it overlaps some other half. The northwest half does not overlap any of the southeast half, but it does overlap a part of the northeast half. Each half of a square has its complementary half, and the two together make the square. For any two halves not to overlap they must be complementary halves; for example, the north half is complementary to the south half, the east half to the west half, the northwest half to the southeast half, and the northeast half to the southwest half. So the northwest half does describe a part of the land included in the north half—that is, 60 acres thereof—and the deed was therefore admissible to prove title.

There was evidence sufficient to carry the question of adverse possession to the jury. Moreover, there was no attempt to limit the recovery to the land only described in the deed.

There was no error in the giving of any one of the plaintiff's requested charges; they each stated elementary principles of law.

There is dictum in an Illinois case (Pry v. Pry et al., 109 Ill. 466), which would seem to be contrary to this holding. The description there, however, presented an entirely different case from this, and is pure dictum. Some of the text-books seem to follow this dictum. However, the question as to the sufficiency of the description is one of fact, geometry and surveying, more than of law.

It results that the judgment must be affirmed.

Affirmed.

SAYRE, SOMERVILLE, GARDNER, and THOMAS, JJ., concur.

ANDERSON, C. J., and McCLELLAN, J., dissent.

ANDERSON, C. J. I cannot concur in the majority opinion, and think that the trial court erred in admitting the deed in evidence, either as title or color of title, as the description of land embraced was void for uncertainty. "The north-west half of the north-west quarter" is unknown to our system of describing land, and in my opinion the triangle shape given the land by the majority in order to make the description definite and certain is contrary to the well-established system of describing land, and is foreign to the intention of the parties to the deed. Wilson v. Wilson, 97 Miss. 423, 52 South. 353; Pry v. Pry, 109 Ill. 466.

McCLELLAN, J., concurs in this dissent.