176 So. 289

**GUEST et al. v. GUEST et al.**

**7 Div. 435.**

Supreme Court of Alabama.

June 24, 1937.

Rehearing Denied Oct. 14, 1937.

582

O. R. Hood and Roger C. Suttle, both of Gadsden, for appellants.

Culli, Culli & Swann, of Gadsden, for appellees.

THOMAS, Justice.

The bill by personal representatives and joint tenants sought injunction to prevent waste on real estate alleged to be committed by the owner of the life estate and by one of the joint owners.

The suit was instituted by appellees filing their original bill of complaint to prevent the commission of waste by appellants on the southeast quarter of section 11, township 10 south, of range 6 east in Etowah county, known as the Jake Reeves farm. The complainants are Luther G. Guest and Tom G. Guest as the executors of the last will and testament of John W. Guest, deceased (Sallie J. Guest, one of the respondents, was the executrix), and seven of the nine children and distributees of said deceased; the said Luther G. Guest and Tom G. Guest, individually,

being two of the seven. The respondents in the bill are Milo Guest, one of the nine children and distributees of John W. Guest, deceased, and Sallie J. Guest, his widow and life tenant; also Hood Parton, a sawmill man who was sawing the timber into lumber. The other of the said nine children and distributees is Grace G. Guest, a daughter who is not made a party to the bill.

It is specifically averred, in effect, in the bill that the respondent Milo Guest, with the consent or connivance of Sallie J. Guest, was committing waste on the southeast quarter of the southeast quarter of the said section 11, township 10 south, of range 6 east, by cutting the valuable timber thereon of which its chief value consisted. It further appears, in effect, from the bill that the said John W. Guest died leaving a last will and testament in which he devised and bequeathed to Sallie J. Guest, his wife, an estate for life in all the lands of which he died seized and possessed, except the 80 acres known as the Elbert Teague place, which he devised and bequeathed to his daughter, Ada Bell Yancey, wife of Turin Yancey; that he devised to respondent Milo Guest and to Noah McKinley Guest the remainder in the farm known as the home place, which consisted of 280 acres; that in his said last will the said John W. Guest directed that, at the death of his said wife, Sallie J. Guest, all of said real estate, except that specifically devised and bequeathed to Milo Guest and Noah McKinley Guest and that to Ada Bell Yancey, be sold and converted into money which should be apportioned among his said legatees and distributees.

It is averred, in effect, in the bill that the said John W. Guest died owning several farms consisting of several hundred acres in Etowah county, and that under the terms of said will the widow, Sallie J. Guest, was entitled to all of the rents, income, and profits from said estate during her life, and that the duty and obligation was placed upon the said Sallie J. Guest by said John W. Guest in said will to pay the taxes and upkeep on said real estate. It also appears from the will that the duty and obligation was imposed on the widow to pay the annual installments due the Federal Land Bank on the place or farm near Attalla known as the Sitz place purchased from Ed. E. Smith; that the said respondent, Milo Guest, was threatening to cut timber off other lands of the said estate, and that the said Milo Guest cut said timber on said southeast quarter of the southeast quarter with the consent or connivance of the said Sallie J. Guest.

The names of all the legatees and distributees of the decedent are given in item 14 of the will. From the bill and the will it appears that Sallie J. Guest was the widow of the deceased; that Milo Guest and Grace G. Guest were two of his children, legatees and distributees; and that the other persons named in that paragraph of the will were the remaining seven of the nine children, or legatees and distributees.

It therefore appears from the bill and from the will that Sallie J. Guest is the owner of a life estate in the real estate, and that the complainants and Milo Guest and his sister, Grace G. Guest, were the owners as tenants in common of the remainder thereof, as we have indicated.

In the prayer of the bill appellees asked that respondents, including Hood Parton, be restrained and enjoined from cutting timber on the lands described in the bill (said S.E. ¼), or any other lands belonging to said estate, and that they be restrained from removing the timber which had already been cut by them, or the lumber manufactured from such timber.

A temporary injunction was granted as prayed for in the original bill. By the first assignment of error appellants contend that the trial court committed error in awarding the temporary writ of injunction.

Appellants Milo Guest and Sallie J. Guest, separately and severally, demurred to the bill of complaint and the trial court overruled the demurrer. By the second assignment of error appellants insist that the trial court erred by that order.

In the interim, on the application of appellants, the trial court modified the writ of injunction so that, in effect, Milo Guest had the privilege and right of removing the timber from the land which he had cleared; and having sawed into lumber that which was fit for lumber, so that the tract of land which he had cleared could be placed in cultivation, upon appellants entering into a bond payable to appellees, he may sell the same.

584

The appellants Milo Guest and Sallie J. Guest filed their answer to the bill of complaint, in which, in effect, they denied that Milo Guest had been or was committing waste on said southeast quarter or any other lands, and that the chief value of the lands from which he had cut or was cutting timber consisted of virgin timber standing thereon. In the answer they averred that the real estate or lands owned by the said John W. Guest, at the time of his death, consisted of five separate and distinct farms, acquired by him at different times, each of which was separately operated and maintained in farming operations, some of said farms being as far as ten miles apart, and one lying in Greene county, Ala.

In their answer they also denied that Milo Guest had threatened to cut timber on the other lands. In effect, they set out in it that Milo Guest, with the consent of the life tenant, his mother Sallie J. Guest, did clear, for the purpose of placing in cultivation, a part of said southeast quarter of the southeast quarter measuring not more than 20 acres, and at the time of the filing of the bill and the issuance of the temporary injunction, a great part of the timber which had been cut remained lying on said 20 acres; that in the lifetime of said John W. Guest a great deal of the virgin timber, or timber suitable for lumber, had been cut, and that at the time Milo Guest cleared said 20-acre tract a comparatively small amount of such standing timber remained on it; that of the said 160-acre Reeves tract, from 50 to 60 acres had been cleared many years before, a large percentage of which had become worn, eroded, and nonproductive and, therefore, not suitable for cultivation; that the cleared land on said farm was not in the proper proportion to the timber land on it; there being about 60 acres of cleared and 100 acres of timber land, and that it was to the advantage of said farm and the conduct of farming operations on it, that additional land be cleared, which, it is averred, rendered said farm of greater value instead of diminishing the value thereof, and that, therefore, said 20-acre tract was not being cleared for the purpose of selling the timber therefrom, but, as aforesaid, for the purpose of affording more cultivatable lands on that farm; that there was not sufficient cleared productive land on it to conduct a separate farming operation thereon. In their answer appellants by full, clear, and explicit averment show that Milo Guest was not committing waste, but was improving and enhancing the value of the Reeves farm and placing it in such shape as adequate farming operations could be conducted on it, and that the value of said farm as a whole had been increased and not diminished by the clearing of said twenty acres. The answer shows that waste was not being, or had not been, committed. It put in issue the right of a tenant in common of the remainder, under the direction and authority of the life tenant, to clear land, not out of proportion to the remaining timbered land, for the purpose of putting the additional cleared land to cultivation, and of making profitable farming operations on the particular farm, the cleared land to take the place of land that had theretofore been cleared, eroded, worn, and so depleted as it was not fertile and would not profitably grow crops; the clearing leaving the farm as a whole of greater value than before the clearing.

The appellees cross-assigned error challenging the action of the trial court in not decreeing adequate damages to the reversion, for the value of the timber or lumber from the trees alleged to have been unlawfully cut by defendants; and for the modifying of the injunction to the cutting of timber only "on the H. P. Smith lands and the ridge lands known as the Jake Reeves lands."

 The court having taken jurisdiction for the purpose of injunction may ascertain and decree damages to real property. It is incidental to the equity of the bill. The measure of damages caused by destruction of timber is the diminished value of the land so caused. Recoverable damages are not fanciful, but such as affects an ordinarily reasonable man in the use of property, of the nature, location, use, and time as is pertinent. Howell v. City of Dothan (Ala. Sup.) 174 So. 624.[1] In an action to recover damages to reversionary interests in lands, by cutting and destroying timber thereon, the measure of damages is the injury to the estate by reason of the destruction of the trees, and not the value of the timber cut. Lowery v. Rowland, 104,

---

[1] Ante, p. 158.

Ala. 420, 16 So. 88; Riggin v. Hogg, 203 Ala. 243, 82 So. 341; Fuller v. Fair, 202 Ala. 430, 80 So. 814; Stoudenmire v. DeBardelaben, 85 Ala. 85, 4 So. 723.

█ In this connection it should be borne in mind that a proper deference must be shown to the judgment of a cotenant in possession and in the management of property partly his own. Walshe v. Dwight Mfg. Co., 178 Ala. 310, 317, 59 So. 630; Jasper Land Co. v. Manchester Sawmills, 209 Ala. 446, 96 So. 417. In Westmoreland v. Birmingham Trust & Savings Bank, 214 Ala. 593, 595, 108 So. 536, 46 A.L.R. 1201, the observation is made that making merchandise of standing timber by a life tenant is waste, whether committed actively or permissively. Jones et al. v. Sandlin, 205 Ala. 67, 87 So. 850.

█ At an early date, Mr. Justice Goldthwaite stated the rule in protection of timber rights of a life tenant, and his ruling has had a constant observance in this jurisdiction. Alexander et al. v. Fisher, 7 Ala. 514, 518. It is there observed:

" * * * We desire not to be understood as asserting, that a tenant in dower, has the absolute right, at pleasure, to cut down or otherwise destroy the growing wood upon the dower lands. Doubtless all such tenants are entitled to house bote, fire bote, and fence bote; in other words, to the timber necessary for fire wood, and for the repairs of the buildings and fences upon the dower lands; but beyond this, it seems that the tenant's right does not extend, except it be within the rule before recognized, to wit: that the change from woodland into arable, is productive of no lasting injury to the inheritance.

"It will probably be found also, that such a tenant has no right, under any. pretext, to destroy groves of timber, or trees planted for shade or ornament."

█ The well-considered and later authorities are to the further effect that the tenant for life has the right to cut timber for the purpose of clearing the land, provided the part cleared, with that already prepared for cultivation, as compared to the remainder of the tract, "does not exceed the proportion of cleared to wooded land usually maintained in good husbandry: and provided, further, that he does not materially *lessen the value of*

*the inheritance.*" 21 A.L.R. 1016, note; Zimmerman Mfg. Co. v. Wilson, 147 Ala. 275, 40 So. 515; Zimmerman Mfg. Co. v. Daffin, 149 Ala.. 380, 42 So. 858, 9 L.R.A. (N.S.) 663, 123 Am.St.Rep. 58.

It may be here noted that the effect of Westmoreland v. Birmingham Trust & Savings Bank, 214 Ala. 593, 108 So. 536, 538, 46 A.L.R. 1201, was that the sale·of standing timber by a life tenant is waste, and he is liable therefor, whether committed actively or permissively; that the guardian having sold standing timber rendered him prima facie liable for same, notwithstanding he had a life estate in the land; and that the life tenant has no right of user for his life in funds derived from wasting the inheritance. It was merely observed that the rule stated "is subject to certain incidents of the life estate in the matter of clearing lands for cultivation and marketing timber removed."

The holding in Jones et al. v. Sandlin, 205 Ala. 67, 87 So. 850, was that a life tenant was not entitled to commit waste by cutting timber, and by such cutting, the timber removed becomes the property of the remainderman whether cut by the life tenant or a third person.

The last-cited cases and others recognize the right of the life tenant to clear lands in accord with the administration of good husbandry. This right only gives the privilege to sell timber cut from such land as is necessary to fit the land for agricultural purposes, and out of such sale there may be reimbursement for the reasonable expense of clearing, removing, and fitting the land for agriculture, according to the rule of good husbandry, under the circumstances of the particular case. The balance of the proceeds from such a timber sale, at its reasonable market value, is the property of the joint owner or remainderman.

█ The right to reduce to cultivation by the cutting and removing of timber, under the rule of the well-considered cases, will not warrant the life tenant in retaining all the proceeds of such timber sale. That is to say, in this case, the life tenant and co-operating remaindermen were properly held accountable for the difference between the reasonable market value of the sale of timber from the land so cleared, and the reasonable market or contract price required

and paid in fitting the land for cultivation, according to the rule of good husbandry, and as it obtains in this jurisdiction.

In its decree, the circuit court held, among other things, as follows:

"The court is further of the opinion that Respondents Mrs. Sallie J. Guest and Milo Guest, committed waste in cutting more merchantable timber on said above described lands than was necessary, and that the cutting of said timber was prejudicial and worked a substantial injury to the inheritance of those entitled to the reversion or remainder. The evidence being without conflict that the merchantable timber derived from that portion of the Reeves land in converting it from woodland into arable lands was all sold and no part of it was used for the construction of a barn on the said Reeves place, and said H. P. Smith place. And that the merchantable timber for the building of said barns was all cut from the said H. P. Smith lands, there being an excess of merchantable timber cut from the Reeves land, to build both of said barns.

" * * * and decreed by the Court that the said Sallie J. Guest and Milo Guest be, and are permanently enjoined during the life of said Sallie J. Guest from cutting timber from the said H. P. Smith land and the said Reeves land, subject to the right of Mrs. Sallie J. Guest to cut from said lands the timber necessary for fire wood and for the repairs of the buildings and fences upon said lands, and the use of said lands by her during her life time as is consistent with prudent husbandry, and as is productive of no lasting injury to the inheritance."

The evidence is voluminous and has been examined. We are of the opinion that the judgment of the trial court is supported by the preponderance of the evidence. The cross-assignments of error of appellees are not well taken or sustained.

The decree of the circuit court is in all respects affirmed.

Affirmed.

ANDERSON, C. J., and FOSTER and KNIGHT, JJ., concur.

GARDNER and BOULDIN, JJ., concur in result.

BROWN, J., dissents.

GARDNER and BOULDIN, JJ., concur in the result on the question of fact as to waste by the life tenant, but consider the question of law in reference thereto is more correctly stated in the dissenting view of Justice BROWN.

BROWN, Justice (dissenting).

This bill is filed by Luther Guest and Tom G. Guest as executors of the estate of John N. Guest, deceased, and by them individually (N. M. Guest, Mrs. Dorah Sizemore, Mrs. Lucinda Thornton, Mrs. Ida Bell Yancey, and Mrs. Janie Brown, joining them as co-complainants), against Milo Guest and Mrs. Sallie J. Guest, their agents, servants, and employees, to enjoin the commission of waste on the southeast quarter of the southeast quarter, section 11, township 10, range 6 east, situated in Etowah county, consisting of 160 acres, known as the "Jake Reeves' place."

The evidence is without dispute that the said Reeves' place was devised by the will of John N. Guest to his widow, Sallie J. Guest, for life, with direction in said will to sell the same on the falling in of the life estate by the death of the life tenant and divide the proceeds between certain of the legatees.

The evidence is without dispute that the timber was cut and removed from the land, by the direction and with consent of the life tenant in possession for the purpose of converting the twenty to twenty-three acres from woodland to arable land; that said Milo Guest was given the timber for doing the clearing; and that he in turn had the merchantable timber sawed into lumber, giving the sawmill man one-half for the sawing, after Milo had delivered the timber to the mill. There was an absence of evidence showing a decrease in the market value of the land as a result of cutting the timber, or as to the reasonable cost of clearing the land.

The life tenant received nothing except the benefits accruing to her in consequence of converting the lands into arable lands, and the increase in the rental value thereof.

The evidence, in its lights most favorable to the complainants, shows that the tract consisted of 160 acres, and from 35 to 60 acres had previously been put to cultivation. With the "new ground," the aggregate made arable did not exceed 80 acres, leaving 80 of

woodland. That some of the old cleared lands—some 10 to 12 acres—had become worn from constant cultivation, and that the practice of good husbandry according to the standards of the locality was not impinged by the clearing.

That the lands cleared were average farm lands, and the evidence shows that in some of the years after said clearing and pending the suit the "new ground" produced eight bales of cotton to ten acres, and some produced fifteen bushels of corn to the acre. The evidence further shows that the clearing enhanced the value of the tract for farming, the use to which it was subjected by the life tenants.

There is an absence of averments or proof that the defendants or either of them are insolvent. The evidence is to the contrary.

It seems to be well settled that "an injunction may be granted to prevent a threatened waste where the defendant is insolvent and the injury would be irreparable; or even where the damages are not irreparable, where it is entirely incapable of measurement at law. Even in cases of tenants in common, court of equity will interfere where the party committing the waste is insolvent; or where the waste is destructive of the estate, and not within the usual legitimate exercise of the right of enjoying it. But the insolvency of the defendant is not itself sufficient to authorize the granting of injunction. There must be some other equitable grounds for the interposition of the court, such as irreparable injury." 27 R.C.L. 1046, § 38; Lyon v. Hunt, 11 Ala. 295, 46 Am.Dec. 216; Wadsworth v. Goree, 96 Ala. 227, 10 So. 848; Coker v. Whitlock, Trustee, 54 Ala. 180; 67 C.J. 630, § 28.

The complainants' right to maintain the bill cannot be measured by the value of the timber cut nor the value of the merchandisable lumber manufactured therefrom, but only by the damage to the reversioner as a chattel real. Stoudenmire v. DeBardelaben, 85 Ala. 85, 4 So. 723; Lowery v. Rowland et al., 104 Ala. 420, 16 So. 88; Riggin v. Hogg et al., 203 Ala. 243, 82 So. 341; Fuller v. Fair, 202 Ala. 430, 80 So. 814.

The circuit court, it seems, in holding that appellants were guilty of waste proceeded on the theory that although the life tenant had a legal right to clear the 20 acres and put it to cultivation and could use the timber removed therefrom for fire wood, and to repair buildings and fences, she had no right to sell any part of the timber or lumber, and if she did or allowed it to be done, she and her codefendant were guilty of waste and must account for the proceeds thereof.

Nearly a century ago—to be exact, 92 years—this court recognized the right of the dower tenant, "when the land of the dower estate was old and worn, to clear new land, if the proportion of woodland was such that a prudent farmer would consider it best to reduce a portion of it to cultivation, thereby to relieve the old land from excess cultivation" without liability to account for the timber removed from the land. In Alexander et al. v. Fisher, 7 Ala. 514, the bill was filed, to quote from the reporter's statement of the case, " * * * by the heirs at law of Edmund Alexander, deceased, against Fisher, who intermarried with the widow of said Alexander, to restrain him in committing waste in certain lands, which were attached as dower to his wife, as the widow of the said Alexander.

"The dower lands consist or four hundred and ninety eight acres, including the late residence and dwelling house of Alexander, about two hundred acres of which are alleged to be cleared, and under fence, for cultivation, and the remainder uncleared and uninclosed, with the exception of some small portions of lots or pasture grounds. The waste is asserted to have been committed in cutting down and clearing, in the year 1841, of ten or more acres of the woodlands; in pulling down and removing a line of fence inclosing the old lands; in destroying a fine grove of walnut timber; and in doing considerable damage to the growing timber.

"It is also asserted that the uncleared lands are broken, composed of light and sandy soil, which will soon be destroyed by cultivation, and that Fisher, when requested by one of the complainants to stop this waste, declared, that he should cut, and clear, as he pleased, and work the lands with a view to his own interest, disregarding that of those who might come after him, and that at the time of filing the bill, he was preparing, by cutting out the undergrowth, to clear more land.

"It is asserted, the grove of walnut trees. alleged to have been destroyed, was left

by Alexander, to break the fogs and damps arising from the river, the grove lying between that and the mansion. Some of the lands cleared by Fisher, it is alleged, were enclosed in lots, for pasture, and the trees left for timber, shade and ornament, and those he is about to clear are adjacent to those last described."

The answer of the defendant admitted cutting the timber for the purpose of reducing the woodland to arable land.

"The Chancellor considered that no waste had been committed in a legal sense, and refused to enjoin the defendant from clearing more land, as it was not shown that it was intended to reduce the proportion of woodland improperly.

"The bill having been dismissed, the complainants insist here, that they are entitled to an injunction against further waste, as well as compensation for that already committed."

The court speaking through Goldthwaite, J., observed:

"We can perceive nothing in the proof in this cause, or in the admissions of the answer, which will warrant a different decree from that rendered by the Chancellor.

"It is true, that in England, it is waste for a tenant in dower to convert woodland into arable, Coke on Litt. 53, b.; but it is evident that the rules which govern and define waste in an old, well settled, cultivated country, have either no application, or at best a very remote one, to a new country, where the timber is of little or no value, and where its destruction is always the preliminary to successful cultivation. Even in England, that which is waste by a tenant in one county, is not always so in another. So, too, with us, it is very evident that in some parts of the State, a destruction of timber would be of lasting injury to the inheritance, whilst in other parts, the same act would be beneficial.

"A number of adjudications have been made in our sister States upon this subject, which show that the subject matter is capable of no general and fixed rule, from the great diversities which exist between the several States, both with respect to the articles produced, as well as in the manner of cultivation; to say nothing of the different and relative values of lands and timber. Findlay v. Smith, 6 Munf.[Va.] 134, 8 Am.Dec. 733; Crouch

v. Puryear, 1 Rand[Va.] 258, 10 Am. Dec. 528. In Hastings v. Crunckleton, 3. Yeates [Pa.] 261, the Court held that a tenant in dower may clear woodlands, if the land cleared bears a proper relative proportion to the whole tract. To the same effect is Parkins v. Coxe, 3 N.C. [2 Hayw.] 339; and we presume many other cases involving the same principle may be found in the reports of other States.

"The Supreme Court of Tennessee, in Owen v. Hyde, 6 Yerg. 334, 27 Am.Dec. 467, assert, that the general criterion by which to determine whether waste has been committed, is, to ascertain whether lasting damage has been done to the inheritance, or its value depreciated. That Court also recognized the right of a tenant in dower, when the land of the dower estate was old and worn, to clear new land, if the proportion of woodland was such that a prudent farmer would consider it best to reduce a portion of it to cultivation, thereby to relieve the old land from excess of cultivation. We entirely concur in this view of the law of waste, as peculiarly applicable to many parts of our own State.

"2. It is proper, however, to remark, that we desire not to be understood as asserting, that a tenant in dower, has the absolute right, at pleasure, to cut down or otherwise destroy the growing wood upon the dower lands. Doubtless all such tenants are entitled to house bote, fire bote, and fence bote; in other words, to the timber necessary for fire wood, and for the repairs of the buildings and fences upon the dower lands; but beyond this, it seems that the tenant's right does not extend, *except it be within the rule before recognized, to wit: that the change from woodland into arable, is productive of no lasting injury to the inheritance."* (Italics supplied.)

When these utterances are considered in the light of the facts of that case and the result of the litigation, it is clear that the court did not hold that in exercising good husbandry in clearing, the life tenant was limited in the use of the timber cut from the clearing to fuel wood and timber or lumber for repairing fences.

The rule established by the great weight of authority in this county is that where the clearing is in good faith and consistent with the practice and uses of good husbandry, for the purpose of convert-

ing woodland into arable lands, and is without detriment to the estate in reversion or remainder, the life tenant is entitled to dispose of the timber cut from the land without liability to account therefor. Jones et al. v. Sandlin, 205 Ala. 67, 87 So. 850; Westmoreland v. Birmingham Trust & Savings Bank, 214 Ala. 593, 108 So. 536, 538, 46 A.L.R. 1201; Warren County v. Gans et al., 80 Miss. 76, 31 So. 539; Rutherford v. Wilson, 95 Ark. 246, 129 S.W. 534, 37 L.R.A.(N.S.) 763; Derham v. Hovey, 195 Mich. 243, 161 N.W. 883, 21 A.L.R. 999, note p. 1015, "A relaxation of strict rule," 1018 "a proceeds of timber."

The note to Rutherford v. Wilson, 37 L.R.A.(N.S.) 771, states: "The rule established by the weight of authority in this county permits the tenant for life to cut timber for the purpose of clearing the land, provided the part cleared, with that already prepared for cultivation as compared to the remainder of the tract, does not exceed the proportion of cleared land to woodland usually maintained in good husbandry; and provided further he does not materially lessen the value of the inheritance." Cited as supporting that rule are cases from Alabama [Alexander v. Fisher, 7 Ala. 514] Arkansas, Georgia, Missouri, North Carolina, New York, 4 Kent's Commentaries; Pennsylvania, Vermont, Wisconsin, and Canada.

27 R.C.L. p. 1028, § 15, thus states the rule: "Subject to the limitations affecting the right to clear the land, the life tenant is entitled to the timber or the proceeds thereof, which he in good faith, cuts for the purpose of clearing the land and fitting it for cultivation. This rule, however, applies only to timber cut by the life tenant for the primary purpose of clearing the land, and does not conflict with the rule that a tenant for life may not cut timber for sale."

This rule and its limitations were recognized in Westmoreland v. Birmingham Trust & Savings Bank, supra, in the following statement taken from that opinion: "Making merchandise of standing timber by a life tenant is waste. He is liable to account therefor, whether committed actively or permissively. This rule is subject to certain incidents of the life estate in the matter of clearing lands for cultivation and marketing timber removed."

The rule was quoted from 16 Cyc., with approval, in Jones v. Sandlin, 205 Ala. 67, 68, 87 So. 850, 851, as follows: "The tenant in this country may usually remove timber so as to fit the land for pasture or cultivation, the rule being that such clearing is not waste if it does not damage or diminish the value of the inheritance and the acts of the tenant are conformable to the rules of good husbandry; and in such cases the timber removed may be sold by the tenant or used off the premises."

The rule is restated in 67 Corpus Juris, 619: "It is not ordinarily considered waste to cut down wood for timber so as to fit the land for cultivation or pasture, provided this does not damage the inheritance, and is conformable to the rules of good husbandry." Citing, as supplying the text, Alexander v. Fisher, supra.

"The general rule as to burden of proof in actions at law and in equity apply in actions for and to enjoin waste. It devolves upon the plaintiff (or complainant) to show that waste has been committed to his injury, and the amount of damage, if any to the freehold. This includes the burden of proving that the alleged acts of the tenant was not rightfully done, for the presumption is in favor of the latter until the contrary appears from the evidence." 67 C.J. 635, § 40.

The foregoing was written after the case was carried to a general conference, with the expectation that it would be adopted as the majority opinion.

The writer deems it not out of place to make application of the rule of the majority opinion to the facts as found by the majority, as the writer understands such finding.

The rule of the prevailing opinion is that, though the life tenant had the right to clear the land, and the clearing was consistent with good husbandry, yet, if she cut more timber therefrom than was necessary to pay for the clearing, she is liable for the proceeds. This rule is contrary to the settled law as shown above and is without support of authority, but, for the sake of argument, its soundness may be conceded. There is nothing to show that more timber was cut than would reasonably pay for clearing, and, as we have shown, the burden of proof was on the complainants. It is not improper to ask: What would be the reasonable

cost of clearing 20 to 23 acres of woodland? Would $10 or $15 per acre be excessive? The evidence is silent.

Assume, as the majority contends, that the defendants cut 50,000 feet. The prevailing opinion states the rule that the value of the manufactured lumber is not the criterion for estimating the damages. What of stumpage at $2 or $2.50 per thousand? Its value would be $100 or $150. If the reasonable costs of the clearing was $10 per acre, it would cost from $200 to $230 to clear the land, and the value of the stumpage would not pay the cost of clearing. A very good reason for the parties not offering evidence showing the reasonable cost of such clearing is, that the rule of the prevailing opinion is the first utterance of any such rule to be found in the books.

The decree as affirmed clearly penalizes the life tenant as the owner of the life estate in the Reeves' tract; and in my opinion is indefensible and should be reversed, and the bill dismissed.

I therefore respectfully dissent.