54 So.2d 897

### FROST v. JOHNSON.
### 2 Div. 297.

Supreme Court of Alabama.

Nov. 1, 1951.

Harry W. Gamble, Selma, for appellant.

Thos. G. Gayle, and John W. Lapsley,
Selma, for appellee.

STAKELY, Justice.

This appeal is taken by appellant (plaintiff below) to review the action of the trial court in granting the defendant's motion to set aside the verdict of the jury and the judgment entered thereon and to grant a new trial in the cause. The only error assigned on this appeal is based on this ruling.

The verdict of the jury in favor of the plaintiff against the defendant was rendered on count 1 of the complaint in the amount of $800. Count 1 is an action of trespass *quare clausum fregit.* This count substantially follows form No. 28, § 223, Code of 1940, Tit. 7, and is as follows: "The plaintiff claims of the defendant Three Thousand ($3,000.00) Dollars damages for trespass by the defendants on the following tract of land, namely; West half of Northwest quarter Section 34, Township 17, Range 11, lying west of Beech Creek, in Dallas County, Alabama, belonging to the plaintiff and for cutting timber upon said land, on various dates from to-wit: March 1, 1948, to August 21, 1948."

Norma Ward Frost (appellant) instituted the action. She is the daughter of William C. Ward and Sarah Ward, both deceased. The will of her father was introduced in evidence. He died in 1926. Under Item Fourth of the will the lands described in the complaint (a part of the "Ward Place"), were devised "to my said wife, Sarah Marley Ward and to my daughter Norma Ward Frost for and during the natural life of my said wife and daughter and at the death of the survivor to be and become the property of my grand children, and should any one of my grand children be dead leaving child, children or descendants of children surviving, then the children or descendants of such dead grandchild shall take the interest of such dead parent."

The following provision, among other provisions, is contained in Item Ninth of the will: "In the event my Grand Children die without leaving children or the descendants of children and their being no direct descendant of my blood, then in that event, whether such deaths occur before the death of my said wife and daughter or after, then, the property herein desposed of shall become the property of the next of kin, of my blood."

Appellant's mother died in December, 1935.

D. L. Johnson (appellee) in 1948 shortly before the alleged trespass purchased the Smith Place, which adjoins the Ward Place and lies immediately east of the Ward Place. There is testimony tending to show that for many years a wire fence in the middle of Beech Creek was used as a boundary fence between the Smith Place and the Ward Place and that Beech Creek was the boundary line at this point. Tendencies of the evidence further show that in 1939 J. C. Petty, the son-in-law of appellant, who was looking after the Ward Place for the appellant, in order to avoid repair and replacement of the wire fence which was located in the middle of Beech Creek constructed a new fence along the west margin of Beech Creek on higher ground. This new fence has since been maintained and was so located at the time of the alleged trespass in 1948.

The alleged trespass in the present case arose out of the cutting of trees west of Beech Creek which grew along the margin of the creek but east of the fence as located in 1939. The testimony shows that 77 trees were so cut by employees of the appellee at appellee's direction in 1948 soon after he purchased the Smith Place.

There is testimony tending to show that the land described in the complaint was worth approximately $3,000 before the cutting of the trees and worth approximately $1500 thereafter. There was no injury to the land except for the cutting of such trees.

The evidence is in conflict with reference to the possession of the strip of land along the west side of Beech Creek on which the trees grew which were cut. This evidence has been considered with due care but since as, we shall undertake to show, the ruling of the lower court in setting aside the verdict and judgment must be affirmed, we forego discussion here for fear its consideration in further litigation might

be prejudiced thereby. German-American Wholesale Optical Co. v. Rosen, 233 Ala. 105, 170 So. 211.

The motion for a new trial assigned various grounds, including (1) that the verdict was contrary to the evidence, (2) contrary to the law, (3) the court erred in refusing to give certain written charges requested by the appellee and (4) that the verdict was excessive. Among the written charges requested by the appellee and refused by the court are Charges No. 8–A and 9–A to the effect that the owner of a life estate in lands is not entitled to recover damages for the cutting of timber therefrom.

■ On appeal from a judgment of the trial court granting a new trial this court will not reverse unless the evidence plainly or palpably supports the verdict. Cobb v. Malone, 92 Ala. 630, 9 So. 738; German-American Wholesale Optical Co. v. Rosen, supra; Parker v. Hayes Lumber Co., 221 Ala. 73, 127 So. 504.

■ As we have indicated possession of the land upon which the trees grew which were cut presents an issue of fact and we cannot say that on this issue the evidence plainly or palpably supports the verdict for the plaintiff. The gist of an action of trespass is injury to plaintiff's possession. Lacey v. Morris, 215 Ala. 302, 110 So. 379. And to recover for trespass on land the plaintiff must have been in possession, actual or constructive, at the time of the commission of the trespass. Kay v. Adams, 223 Ala. 33, 134 So. 628. Furthermore it is settled that constructive possession of land resulting from legal title is sufficient to support an action of trespass to the land, where the person committing the trespass is not in adverse possession at the time of the trespass. Landrum v. Davidson, 252 Ala. 125, 30 So.2d 662; Green v. Marlin, 219 Ala. 27, 121 So. 19.

■ Under the terms of the will of William C. Ward a life estate was devised to the testator's wife and his daughter (appellant) in the land and on the death of the survivor the remainder interest is devised to the grandchildren of the testator, as hereinabove set forth. The proof shows that the wife of testator was dead and therefore the appellant as survivor owned a life estate in the lands with provisions for vesting the remainder interest on her death. The contingent remainder provided in Item Ninth of the will under which the remainder interest might revert to appellant (daughter of testator) in the event of the death of testator's grandchildren without leaving children or descendants of children, cannot be considered in this case for the reason that such contingency was not shown by the proof to have happened. The burden was certainly on the plaintiff to show that such contingency had happened in order to show that she owned the entire interest in the property. Under the proof neither the court nor the jury were warranted in concluding or assuming that appellant owned anything other than a life estate.

■ It is the settled law in this state that a life tenant in an action of trespass to land may recover nominal damages or actual damages done to the soil or to his possession but is not entitled to recover for the value of timber cut from the lands. Zimmerman Mfg. Co. v. Daffin, 149 Ala. 380, 42 So. 858, 9 L.R.A.,N.S., 663; Daffin v. C. W. Zimmerman Mfg. Co., 158 Ala. 637, 48 So. 109; First Nat. Bank of Mobile v. Wefel, 252 Ala. 212, 40 So.2d 434; Guest v. Guest, 234 Ala. 581, 176 So. 289; Jones v. Sandlin, 205 Ala. 67, 87 So. 850.

■ To sum up the situation assuming that the evidence showed that the defendant was in the actual possession of the land at the time the timber was cut, it was necessary for the plaintiff to introduce evidence showing title in her under which she may be construed as in the constructive possession of the land, if the defendant is not shown to be in adverse possession. Since the only title shown in the plaintiff was a life interest in the lands and the life tenant under the evidence could not recover for more than nominal damages, it is obvious that the court was justified in setting aside the verdict and the judgment thereon. We say that the plaintiff could not recover more than nominal damages because there is no proof which shows the difference in

388

value of plaintiff's possessory rights before and after the cutting. Garnett Smelting & Development Co. v. Watts, 140 Ala. 449, 37 So. 201; Zimmerman Mfg. Co. v. Daffin, 149 Ala. 380, 42 So. 858, 9 L.R.A.,N.S., 663; Zimmerman v. Shreeve, 59 Md. 357; 31 C. J.S., Estates, § 67, page 88.

It is sought however to justify the verdict on the theory that the plaintiff was entitled to nominal damages and the balance of the recovery can be attributed to a finding for punitive damages. The court in its oral charge instructed the jury to the effect that punitive damages were not recoverable under counts 1, 2 or 3 but only under count 4, which alleged that the timber was willfully and maliciously cut. There were no exceptions to the oral charge. In fact it was announced by counsel that the charge was satisfactory. The charge of the court under the circumstances became the law of the case. Penticost v. Massey, 202 Ala. 681, 81 So. 637.

Furthermore there is no proof of a trespass intentionally and purposely committed in a known violation of the owner's rights and without lawful excuse or justification. Foust v. Kinney, 202 Ala. 392, 80 So. 474; Stockburger v. Aderholt, 204 Ala. 557, 86 So. 464. The appellee made inquiry of various tenants on his place as to the location of the western boundary line of the Smith Place before he ordered the timber cut and was informed that the fence on the west side of Beech Creek marked the boundary between these two places. This strip of land was used for a pasture for the tenants of the Smith Place and had been so used since 1939. There was no testimony of any warning, protest or objection given to appellee with reference to cutting the timber. Nor was there any proof of actual knowledge on the part of the appellee that the fence on the west side of Beech Creek was not located along the boundary line between the Smith and Ward Places.

William C. Ward died in 1926. Accordingly the statute which was enacted in 1939 and which now appears as § 75 et seq., Title 58, Code of 1940, can have no application. We make this statement to show that there has been no consideration of this statute in respect to the present case but not to imply that, if considered, the statute would in any way affect the result.

It follows from what we have said that the judgment of the lower court must be affirmed.

Affirmed.

LIVINGSTON, C. J., and BROWN and FOSTER, JJ., concur.